State of NEW YORK, et al., Plaintiffs

v.

**MICROSOFT CORPORATION,** Defendant.

No. CIV.A.98–1233(CKK).

United States District Court, District of Columbia.

Sept. 22, 2003.

Alan R. Kusinitz, New York State Attorney General's, Jay L. Himes, New York Department of Law, New York, NY, Kevin J. O'Connor, Office of the Attorney General of Wisconsin, Madison, WI, Richard L. Schwartz, New York Attorney General's Office, New York, NY, Steven R. Kuney, Williams & Connolly, Brendan V. Sullivan, Jr., Williams & Connolly LLP, Washington, DC, Ellen S. Cooper, Office of the US Attorney General, Baltimore, MD, Douglas Lee Davis, Office of Attorney General State of West Virginia, Charleston, WV, for Plaintiffs.

Barbara W. Wall, Gannett Co., Inc., McLean, VA, Jay Ward Brown, Levine, Sullivan, Koch & Schulz, LLP, Lee Levine, Levine, Sullivan & Koch, LLP, Washington, DC, Mark E. Faris, Gannett Co., Inc., McLean, VA, Eric Lieberman, Mary Ann Werner, Washington, DC, Karlene Goller, Los Angeles, CA, Stuart D. Karle, Dow, Jones & Co., Inc., New York, NY, Jonathan Donnellan, Cable, News, Network, LP, LLLP, Atlanta, GA, David A. Schulz, Clifford, Chance, Rogers & Wells LLP, New York, NY, for Intervenor Plaintiff.

Bradley Paul Smith, Sullivan & Cromwell, Washington, DC, John L. Warden, Richard J. Uroksky, Steven L. Holley, Sullivan & Cromwell, New York, NY, William H. Neukom, Dan K. Webb, Bruce R. Braum, Derek J. Sarafa, Scott P. Glauberman, Winston & Strawn, Chicago, IL, for Defendant.

## MEMORANDUM OPINION

KOLLAR–KOTELLY, District Judge.

Currently pending before the Court is the Commonwealth of Massachusetts's ("Massachusetts" or "Plaintiff") Motion for Attorneys' Fees and Expenses. Microsoft Corporation ("Microsoft" or "Defendant") opposes Plaintiff's motion, arguing that Massachusetts's request should be substantially reduced or denied entirely. After reviewing Plaintiff's Statement of Points and Authorities in Support of Motion for Attorneys Fees ("Pl.'s Mem."), Defendant's Opposition, and Plaintiff's Reply, the Court provided Microsoft the opportunity to supplement its briefing to address Plaintiff's Massachusetts-state-law arguments, which were essentially briefed only in Plaintiff's Reply. *New York v. Microsoft Corp.*, Civ. No. 98–1233 (D.D.C. July 3, 2003) (order permitting Defendant to file a supplemental brief). Microsoft filed an additional brief addressing the issue, and Massachusetts filed a motion for leave to file a response brief which the Court shall grant. Massachusetts also filed a supplemental brief, seeking additional attorneys' fees for work done on its Massachusetts law response brief, and reducing its request for costs. In all, Plaintiff seeks $20,302.72 in what it alternatively refers to as expenses and costs, and

$1,992,075.00 [1] in attorneys' fees. After reviewing all the briefing, the submitted exhibits and the relevant law, the Court shall grant Plaintiff $967,014.52 in attorneys' fees, and $0.00 in costs.[2]

## I: INTRODUCTION

On May 18, 1998, simultaneous with the filing of a complaint by the United States in a related case, a group of state plaintiffs filed a civil complaint alleging antitrust violations by Microsoft and seeking preliminary and permanent injunctions barring the company's allegedly unlawful conduct. *See United States v. Microsoft Corp.*, 253 F.3d 34, 47 (D.C.Cir.2001). In *United States v. Microsoft Corp.*, No. 98–1232 (D.D.C.), the federal government brought claims pursuant to federal law, while in *State of New York, et al. v. Microsoft Corp.*, No. 98–1233 (D.D.C.), the Plaintiff States brought claims pursuant to both federal and state law. These two cases were consolidated, and following a bench trial in the consolidated cases, Judge Thomas Penfield Jackson concluded that Microsoft had violated Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2, imposing liability for illegal monopoly maintenance, attempted monopolization, and unlawful tying. *United States v. Microsoft Corp.*, 87 F.Supp.2d 30, 35 (D.D.C.2000). Correspondingly, Judge Jackson held that Microsoft had violated the state antitrust laws analogous to Sections 1 and 2 of the Sherman Act in each of the nineteen plaintiff states and the District of Columbia. *Id.* at 54. To remedy these findings of liability, Judge Jackson ordered the division of Microsoft into two separate corporations. *United States v. Microsoft Corp.*, 97 F.Supp.2d 59, 64 (D.D.C.2000). Microsoft filed an appeal in both cases. On appeal, the D.C. Circuit deferred to Judge Jackson's factual findings, *Microsoft*, 253 F.3d at 118, altered his findings of liability—affirming in part and reversing in part—and vacated the remedy decree, *id.* at 46.

The appellate court remanded the cases to this Court with instructions to hold a "remedies-specific evidentiary hearing," *id.* at 103, and to "fashion an appropriate remedy" in light of the revised liability findings, *id.* at 105. Following remand, pursuant to Court Order, the parties in the two consolidated cases entered into intensive settlement negotiations. *See United States v. Microsoft Corp.*, Nos. 98–1232 and 98–1233 (D.D.C. Sept. 28, 2001) (order requiring the parties to enter into settlement negotiations). The settlement negotiations did not resolve both cases in their entirety. However, the United States and Microsoft were able to reach a resolution in *United States v. Microsoft Corp.* in the form of a proposed consent decree. The settlement negotiations were partially successful with regard to the states' case, *State of New York, et al. v. Microsoft Corp.*; a portion of the plaintiffs in that case joined the settlement between the United States and Microsoft. The states which opted not to join the settlement between the United States and Microsoft, including Massachusetts, proposed a reme-

---

1. This request includes $1,277,865.00 in fees spent prior to July 2000 (classified by Plaintiff as fees relating to the liability phase of this case), $594,400.00 in fees spent between July 2000 and this Court's Final Judgment (classified by Plaintiff as fees for the remand/remedy phase of the case), $114,326.00 in fees for time spent on the attorneys' fee petition and reply brief, and $5,484.00 in fees for time spent on its supplemental brief on Massachusetts law. Pl.'s Mem. at Ex. A; Pl.'s Reply at Schedule C; Pl.'s Supplemental Request.

2. As discussed *infra*, Plaintiff's request for "costs" was actually a request for out-of-pocket expenses, which are considered a component of attorneys' fees and are analyzed as such.

dy distinct from that presented in the proposed consent decree.

Following expedited discovery, on March 18, 2002, an evidentiary hearing on the issue of the remedy commenced. The parties submitted the direct testimony in written format, while cross-examination and re-direct testimony were offered in open court. Over thirty-two trial days, the Court reviewed the written direct testimony and heard the live testimony of fifteen witnesses proffered by Plaintiff States and nineteen witnesses proffered by Microsoft. On November 1, 2002, the Court issued its Final Judgment in *State of New York, et al. v. Microsoft,* adopting some, but rejecting many of the litigating states' proposed remedies. *State of New York v. Microsoft Corp.,* 2002 WL 31439740 (D.D.C. Nov.01, 2002). On November 12, 2002, the Court entered its Final Judgment in *United States v. Microsoft,* approving the consent decree. *United States v. Microsoft Corp.,* 2002 WL 31654530 (D.D.C. Nov.12, 2002); *see also United States v. Microsoft,* 231 F.Supp.2d 144 (D.D.C.2002) (memorandum opinion analyzing and conditionally approving the proposed consent decree).

Of the litigating states, only Massachusetts and West Virginia appealed this Court's Final Judgment in *State of New York, et. al. v. Microsoft.* On December 16, 2002, Massachusetts and the State of West Virginia filed a motion for attorneys fees and a motion to stay proceedings pending their appeal. The Court denied the motion to stay proceedings. *State of New York, et al. v. Microsoft Corp.,* 2003 WL 299440 (D.D.C. Jan.15, 2003). On June 20, 2003, West Virginia voluntarily withdrew its motion for attorneys' fees and expenses with prejudice as well as its appeal of this Court's November 1, 2002, Order. Therefore, the only matter before this Court is Massachusetts's motion for attorneys' fees and expenses.

Massachusetts asks the Court to award it $20,302.72 in what it alternatively refers to as expenses and costs, and $1,992,075.00 [3] in attorneys' fees. Microsoft does not dispute Plaintiff's right to fees under these statutes, nor does it contest the reasonableness of the hours or rates proposed by Plaintiff. Microsoft's challenge to Plaintiff's request can be divided into two main arguments. The first is that Plaintiff did not prevail on a large number of its claims, and therefore cannot collect attorneys' fees and costs for time spent on those efforts. Def.'s Opp'n at 5–24, 41. The second argument centers around the sufficiency of Massachusetts's documentary support for its request for fees and costs; specifically, Microsoft complains that Plaintiff did not keep contemporaneous records, its records contain inconsistencies and implausible consistencies, Plaintiff used objectionable multi-day block billing, and its entries lack the requisite particularity. *Id.* at 25–41.

## II. DISCUSSION

Before commencing its analysis of the substance of Plaintiff's fee petition, the Court addresses two preliminary matters. The first is Plaintiff's repeated reference to settlement offers allegedly proffered by Microsoft, and the settlement agreements reached by Microsoft and the other state parties to this suit. Pl.'s Reply at 1–2, 22; Pl.'s Mass. Law Reply at 2; Pl.'s Opp'n to Def.'s Mot. for Protective Order at 6. Plaintiff contends that Microsoft's position on its fees request is motivated by a desire to punish Plaintiff for appealing this Court's November 1, 2002, Final Judgment in this case. Pl.'s Reply at 1. The Court finds this argument to be irrelevant to its consideration of the fee petition. What

---

**3.** The breakdown of this request is described *supra* at Note 1.

Microsoft may have been willing to offer Plaintiff likely reflects considerations other than the merits of Plaintiff's fee petition. Moreover, neither Microsoft's nor Plaintiff's willingness or unwillingness to settle the attorneys' fee matter has any bearing on the merits of Plaintiff's fee petition. The Court therefore draws no inferences regarding the reasonableness of Plaintiff's fee petition from its descriptions of settlement discussions, nor its decision not to settle but to appeal judgment.

The second preliminary matter the Court addresses is the basis of Plaintiff's fee petition. As the following pages show, Plaintiff's failure to provide a coherent legal and factual basis for its request has made what should have been a fairly straightforward exercise for the Court, one that has required much time and effort. The Court has endeavored to decipher the legal and factual bases for Plaintiff's request, understanding that the underlying lawsuit was one of great complexity that required much time and effort to litigate. In many instances, however, the deficiencies in Plaintiff's request left the Court with no choice but to reduce its recovery. Plaintiff's haphazard and incomplete invocation of Massachusetts law required a greater expenditure of judicial resources than one would have expected given the fact Plaintiff is the Commonwealth of Massachusetts and represented by its Attorney General's Office. Furthermore, had Plaintiff elected to keep contemporaneous records of its attorneys' hours, or provided the Court with more detail regarding the activities that underlie its request, the Court's consideration of this petition would have been much less taxing and Plaintiff likely would be more satisfied with the outcome.

In this regard, the Court notes that Plaintiff provides no excuse for its failure to maintain such records. This may be because it has no excuse. The record reflects that Plaintiff was aware at the commencement of its investigation in this case that it could be awarded attorneys' fees, and the complaint filed in this case included in its prayer for relief an award of reasonable attorneys' fees. Def.'s Opp'n at 33 (citing Def.'s Ex. 4 (Kaplan Dep.) at 193, 197). Assistant Massachusetts Attorney General Kaplan testified that Plaintiff was aware at the time the complaint was filed that if it was successful it might have to file a fee petition and "identify the hours expended with reasonable particularity." Def.'s Ex. 4 at 200. Despite this knowledge, Plaintiff failed to maintain contemporaneous records. Even more surprising is the fact Plaintiff did not change its time-keeping practice (or non-practice) after July 2000, when the litigating states were preparing their first fee petition and realized that better time records needed to be kept. Def.'s Opp'n at 33; Def.'s Ex. 5 (Dep. of Assistant Attorney General of West Virginia Douglas L. Davis) at 72–76. Specifically, state attorney general offices were instructed to "start recording time," and "make things task-specific as opposed to aggregating or block-time recording." Def.'s Ex. 5 at 74.[4] These facts make Massachusetts's failure to keep contemporaneous records, especially during the remand phase of the case, inexplicable.

Having set forth these preliminary comments, the Court now turns to the merits of Plaintiff's fee petition.

---

4. Assistant Attorney General of West Virginia Davis testified that he does not know if Massachusetts participated in the series of conference calls during which the decision to keep better records was made. Def.'s Ex. 5 at 74–75. However, Mr. Davis testified that he doesn't "have any reason to think they weren't involved," *id.* at 76, and Massachusetts has not addressed the issue despite Microsoft's discussion of the conference call in its opposition brief, Def.'s Opp'n at 33.

### A. The Appropriate Standard to Apply to Plaintiff's Fee Petition

Plaintiff moves for attorneys' fees under both Section 16 of the Clayton Act, 15 U.S.C. § 26, and the attorneys' fees and costs provision of the Massachusetts Antitrust Act, M.G.L.A. 93A § 4. Pl.'s Mem. at 1.

In its opposition brief, Defendant notes that Plaintiff devotes two sentences in its opening brief to the issue of its claims under Massachusetts law and that Plaintiff did not "argue that the standards governing a fee award under [the Massachusetts statute] differ from the federal standard, but instead … rely[s] entirely on federal case law to justify [its] fee request[ ]." Def.'s Opp'n at 42. Microsoft argues that since "the standards are the same for determining a reasonable attorneys' fee under both state and federal law, this Court need not undertake a separate analysis of these issues under state law." Id. at 43. Plaintiff, in its reply brief, disagreed. Despite spending virtually no time in its opening brief discussing the Massachusetts attorneys' fees provision, and absolutely no time on the appropriate standard to apply to its state law claim, the Commonwealth of Massachusetts, represented by its Attorney General's Office, argues for the first time in its reply brief that regardless of whatever reductions are warranted under federal law, Plaintiff is entitled to its full request under Massachusetts law. Pl.'s Reply at 19–23.

Having no briefing from Defendant on this argument, the Court offered Microsoft the opportunity to brief the issue of the applicability of Massachusetts law to Plaintiff's motion for fees and costs. *New York v. Microsoft*, No. 98–1233 (D.D.C. July 3, 2003). Microsoft availed itself of this opportunity, and submitted a brief in which it contends that the outcome of Plaintiff's motion is no different under Massachusetts law than it is under federal law. Def.'s Mem. on the Applicability of State Law to Massachusetts's Mot. for Att'ys Fees and Expenses ("Def.'s Mem."). Moreover, Microsoft contends that should the Court determine otherwise, it must apply federal standards for determining Plaintiff's award because such calculations are procedural and, under the *Erie* doctrine,[5] this Court must apply federal procedural rules when addressing state law claims. *Id.* at 10–11. Massachusetts, in its Reply Memorandum Supporting the Commonwealth of Massachusetts' Right to Attorneys Fees and Costs Under Massachusetts Law ("Pl.'s Mass. Law Reply"),[6] argues that the standards for considering attorneys' fees awards under Massachusetts law differ from those applied under federal attorneys' fees statutes, and that the Court must observe these distinctions as under the *Erie* doctrine the entire state attorneys' fees regime must be applied. Pl.'s Mass. Law Reply.

The Court observes, as an initial matter, that since Plaintiff is entitled to fees under both federal and Massachusetts law, whichever regime provides Plaintiff with the largest award should be applied. Accordingly, in ruling on the present motion, the Court must examine whether or not the federal and Massachusetts regimes dif-

---

**5.** *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

**6.** Massachusetts moved for leave to file a Reply Memorandum to which it attached its Reply Memorandum. Microsoft objected to this request, Pl.'s Mot. for Leave to File Reply Mem. Concerning Massachusetts Law at 1, but did not file its objections with the Court. Given that the issue of the applicability and standards of Massachusetts law is an important aspect of the pending fee petition, the Court shall grant Plaintiff's Motion and consider the arguments it makes in its Reply Memorandum, which is essentially a surreply.

fer, and if so the impact of such differences on Plaintiff's recovery. Should the Court find that Plaintiff is entitled to a greater award under Massachusetts law, as Plaintiff maintains, then the Court must determine whether or not the *Erie* doctrine is implicated by such an analysis.

### 1. Massachusetts General Law Chapter 93A, Section 4

Plaintiff has moved for attorneys' fees pursuant to a provision of the Massachusetts Antitrust Act, which provides in part:

> If the court finds any method, act, or practice unlawful with regard to any security or any contract of sale of a commodity for future delivery as defined in section two, the court . . . may require said person to pay the reasonable costs of investigation and litigation of such violation, including reasonable attorneys fees.

M.G.L.A. 93A § 4. The Court now reviews those aspects of Massachusetts attorneys' fees law that are implicated by Plaintiff's motion and Defendant's opposition.[7]

 It is clear that under Massachusetts law, "an attorney's fees award should be adjusted to eliminate any award for legal services rendered in connection with unsuccessful claims." *Nasco, Inc. v. Public Storage, Inc.*, 127 F.3d 148, 154 (1st Cir.1997) (deciding case under Mass. Gen. Laws ch. 93A) (citing *Jet Line Servs., Inc. v. Am. Employers Ins. Co.*, 404 Mass. 706, 537 N.E.2d 107, 114–15 (Mass.1989)); *see also Arthur D. Little Int'l, Inc. v. Dooyang Corp.*, 995 F.Supp. 217, 224 (D.Mass.1998)

(discounting attorney billings to account for unsuccessful portion of suit brought under Mass. Gen. Laws ch. 93A) (citing three cases where courts reduced attorneys fee requests for time spent on unsuccessful portions of 93A claims). "[I]f a plaintiff prevails on some, but not all, of his claims, *and there is no interconnection,* the fee award might be limited to the time spent regarding the proven chapter 93A violation." *Arthur D. Little Int'l, Inc.*, 995 F.Supp. at 222–23 (quoting *Peckham v. Continental Cas. Ins. Co.*, 895 F.2d 830, 842 (1st Cir.1990)) (emphasis in original). "[P]laintiff is not entitled to recover for litigating claims that were unsuccessful" and it is the moving party's burden to "show that the hours spent and the rate charged were reasonable and [that the party is] entitled to costs and fees only for the claims on which [it was] successful." *Layer Eight Sys., Inc. v. Daley*, 1994 WL 902946, at * 1 (Mass.Super.1994). It is also the moving party's burden to "segregate those [unsuccessful] claims out of its overall fee requests." *Id.; see also id.* at *2 (reducing petitioner's award by 32 percent to account for unsuccessful claims).

 When successful and unsuccessful claims are related, courts deciding cases brought pursuant to Chapter 93A have looked to the overall success to determine the reasonableness of the award. *Equitable Life Assurance Soc'y of the United States v. Porter–Englehart*, 867 F.2d 79, 91 (1st Cir.1989) (denying plaintiff's request for fees because, even though she was technically a prevailing party, her success

7. The Court notes that despite the supplemental submissions, and the involvement of the Massachusetts Attorney General's Office, the briefing on the Massachusetts law standards for awarding attorneys' fees is less than complete. For example, the parties' briefing is completely devoid of any discussion of *Fontaine v. Ebtec Corp.*, 415 Mass. 309, 613 N.E.2d 881, 891 (1993), or *Berman v. Lin-*

*nane*, 434 Mass. 301, 748 N.E.2d 466 (2001), discussed *infra*, despite their obvious impact on the fee petition currently before this Court. This failure has made the briefing on this matter, especially that by Plaintiff who advocates that the two regimes are different, largely useless. As a result, the Court has had to conduct its own review of the relevant caselaw in order to determine the state of the law.

was on a matter not the focus of her suit); *GTE Gov't Sys. Corp. v. Rackemann, Sawyer & Brewster, P.C.*, 1996 WL 1185137, at * 12 (Mass.Super.Apr.4, 1996) (reducing fees by 15 percent to account for time spent on interrelated but unsuccessful claim in a Chapter 93A suit).

In 1993, the Supreme Judicial Court of Massachusetts revisited the method by which attorneys fees are calculated in Massachusetts. The court, addressing an attorneys' fees statute it had yet to interpret, wrote:

> In the analogous area of fee awards based on G.L. c. 93A (1990 ed.), we said in *Heller v. Silverbranch Constr. Corp.*, 376 Mass. 621, 629, 382 N.E.2d 1065 (1978), that in calculating a fee award, a judge should consider "(1) how long the trial lasted, (2) the difficulty of the legal and factual issues involved, and (3) the degree of competence demonstrated by the attorney." In *Linthicum v. Archambault, supra*, 379 Mass. at 388–389, 398 N.E.2d 482, the list of factors lengthened, to include: "the nature of the case and the issues presented, the time and labor required, the amount of damages involved, the result obtained, the experience, reputation and ability of the attorney, the usual price charged for similar services by other attorneys in the same area, and the amount of awards in similar cases." The list of factors matched the standard in effect in the Federal courts at that time. *Darmetko v. Boston Hous. Auth.*, 378 Mass. 758, 764, 393 N.E.2d 395 (1979). In *Stratos v. Department of Pub. Welfare*, 387 Mass. 312, 321, 439 N.E.2d 778 (1982), a case arising under a Federal fee-shifting statute, it was said, in reference to this list of factors, that their application "do[es] not lead with any certainty to a number of dollars." In choosing among the various approaches then current in the Federal courts, it

was said: "We believe it is enough to state ... that ... fair market rates for time reasonably spent should be the basic measure of reasonable fees, and should govern unless there are special reasons to depart from them" (footnote omitted). *Id.* at 322, 439 N.E.2d 778. The most recent in this line of cases, then, expresses basic approval of the lodestar approach, now mandated in Federal fee-shifting cases, and used by the judge in this case. The Massachusetts Commission Against Discrimination has also employed the lodestar method as its starting point in calculating a reasonable attorney's fee under c. 151B, § 5, as amended through St.1989, c. 722, § 27. *Karen Baker vs. Town of Winchester School Committee*, MCAD No. 87–BEM–0283 (Nov. 12, 1991).

> The lodestar approach has the advantage of producing generally consistent results from case to case. Its use in the courts of the Commonwealth may also reduce forum shopping. Because State and Federal antidiscrimination laws prohibit similar conduct, attorney's fees available in both fora should, for the most part, be calculated in a similar manner. *Bournewood Hosp., Inc. v. Massachusetts Comm'n Against Discrimination*, 371 Mass. 303, 310, 358 N.E.2d 235 (1976). To the extent that our cases may have been ambiguous on this point, we repeat what was said in *Stratos v. Department of Pub. Welfare, supra. A fair market rate for time reasonably spent preparing and litigating a case is the basic measure of a reasonable attorney's fee under State law as well as Federal law.*

*Fontaine v. Ebtec Corp.*, 415 Mass. 309, 613 N.E.2d 881, 891 (1993) (emphasis added); *see also Cargill v. Beaver Coal & Oil Co.*, 424 Mass. 356, 676 N.E.2d 815 (1997) (noting that trial judges have discretion in

determining attorneys' fees awards, and that the trial judge's use of the lodestar analysis without considering additional factors was not clearly erroneous). This pronouncement appears to articulate the standard for the calculation of attorneys' fees under Massachusetts law, including M.G.L. 93A. *See GTE Gov't Sys. Corp.,* 1996 WL 1185137, at * 12 ("[I]t is now clear that fees awarded under G.L. c. 93A, are to be determined in accordance with the so-called 'lodestar' method long employed in the federal courts.") (citing *Fontaine,* 415 Mass. at 326, 613 N.E.2d 881); *Layer Eight Sys., Inc. v. Daley,* 1994 WL 902946, at * 1 (Mass.Super.1994) ("Now, attorneys' fees under G.L. c. 93A, as well as other Commonwealth statutes providing for an award of attorneys' fees, are to be determined by the 'lodestar' method.") (citing *Fontaine,* 415 Mass. at 325–26, 613 N.E.2d 881). Massachusetts's highest court has also instructed that the lodestar analysis "should be the amount of the award unless there are special reasons to depart from it." *Stowe v. Bologna,* 417 Mass. 199, 629 N.E.2d 304, 307 (1994) (involving a claim brought under the Cambridge Rent Control Act).

 However, a recent case decided by the Supreme Judicial Court of Massachusetts muddies the waters. In *Berman v. Linnane,* 434 Mass. 301, 748 N.E.2d 466 (2001), the court reviewed a lower court's attorneys' fees award. The *Berman* court wrote:

> What constitutes a reasonable fee is a question that is committed to the sound discretion of the judge. *See McGrath v. Mishara,* 386 Mass. 74, 87, 434 N.E.2d 1215 (1982). When determining a reasonable attorney's fee, the focus is not the bill submitted, as Berman and Marcus suggest, or the amount in controversy, as Linnane suggests, but several factors, including "the nature of the case and the issues presented, the time and labor required, the amount of damages involved, the result obtained, the experience, reputation and ability of the attorney, the usual price charged for similar services by other attorneys in the same area, and the amount of awards in similar cases." *Linthicum v. Archambault,* 379 Mass. 381, 388–389, 398 N.E.2d 482 (1979). No one factor is determinative, and a factor-by-factor analysis, although helpful, is not required. *See Margolies v. Hopkins,* 401 Mass. 88, 93, 514 N.E.2d 1079 (1987). Here, the judge considered those factors on which evidence was presented, as well as his experience from the trial. He was not required to review and allow or disallow each individual item in the bill, but could consider the bill as a whole. He concluded that the legal issues were relatively straightforward, and that much of the work performed was repetitive and unnecessary. These findings are not clearly erroneous. *See Cargill, Inc. v. Beaver Coal & Oil Co.,* 424 Mass. 356, 363, 676 N.E.2d 815 (1997).
>
> The judge also determined that reasonable attorneys would have spent no more than a total of 475 hours at an average rate of $200 an hour for both the trial and the appeal. He thus determined that a reasonable fee would be $95,000. This method of calculating a fee, known as a "lodestar" award, is one that we have previously approved. *See id.; Fontaine v. Ebtec Corp.,* 415 Mass. 309, 324–325, 613 N.E.2d 881 (1993). We are satisfied that the judge was mindful of the appropriate factors, and that his use of this method to calculate the fee was not an abuse of discretion. *McGrath v. Mishara, supra* at 87, 434 N.E.2d 1215.

*Berman,* 748 N.E.2d at 469. Although the

precedent could be clearer,[8] the Court finds that Massachusetts law permits this Court to conduct a lodestar analysis, followed by consideration of various factors to come up with an appropriate award that is subject to review on an abuse of discretion standard. Furthermore, the Court notes that Massachusetts law does not require the Court to conduct a "factor-by-factor" analysis, and determinations of what constitutes a reasonable award are committed to the judge's discretion.

■ In terms of documentation of hours spent in support of a prevailing party's lodestar request, there is no firm contemporaneous records requirement in Massachusetts law. The Supreme Judicial Court of Massachusetts has made this plain: "While contemporaneous time records go a long way to document a claim for attorney's fees, it cannot be said that such time records are, as a matter of law, a condition

precedent to such an award." *Arlington Trust Co. v. Caimi,* 414 Mass. 839, 610 N.E.2d 948, 953–54 (1993). Therefore, although there is no requirement that parties present contemporaneously prepared time records, the failure to do so may affect an attorney's ability to adequately document his or her request and thereby affect the amount a court awards the attorney.[9]

■ Furthermore, the submission of time records that do not provide detail as to the tasks performed during the hours claimed may be insufficient to support an award of attorneys' fees. *Roberts v. Dep't of State Police for the Commonwealth,* 2002 WL 31862711, *4 (Mass.Super.Sept.26, 2002). The *Roberts* court was presented with an attorney's time records which often lacked any information regarding the nature of the work performed dur-

---

8. Indeed, a review of Massachusetts lower court decisions reveals a lack of uniformity in the calculation of attorneys' fees, with some courts following the *Fontaine* lodestar formulation and others observing the pre-*Fontaine* non-lodestar approach.

9. One Massachusetts court has made clear the weight courts afford contemporaneous records when determining reasonable attorney's fees:

> We cannot emphasize too strongly the importance of reasonable time records, made contemporaneously with the work, as showing whether the time was prudently expended, involved duplication, or had a reasonable relation to the issues. Such records, of course, are *very helpful in establishing that the time was really expended,* an issue on which an attorney should be prepared to satisfy his client.

*Mulhern v. Roach,* 20 Mass.App.Ct. 322, 330 n. 14, 480 N.E.2d 308 (1985) (emphasis added), *rev'd on other grounds,* 398 Mass. 18, 494 N.E.2d 1327 (1986); *see also Edinburg v. Edinburg,* 22 Mass.App.Ct. 192, 492 N.E.2d 1159, 1163 (1986) ("[C]ontemporaneously prepared time records [are] probably the most important factor[s] in arriving at a fair

fee determination."); *Chicago Ins. Co. v. Lappin,* 58 Mass.App.Ct. 769, 792 N.E.2d 1018, 1029 (2003) ("[W]e generally frown on reconstructed documentation of fees and costs ...."). It is also noteworthy that the Massachusetts Practice Series advises attorneys practicing in the Commonwealth that, "[i]n proving the amount of attorneys fees, contemporaneous time records, while not absolutely essential where there is other reliable evidence to support the claim, are very important." 17C Richard W. Bishop, Massachusetts Practice Series § 60.1 (1997); *see also* 21 Richard W. Bishop, Massachusetts Practice Series § 18.3 (1997) ("In recent years our appellant courts have repeatedly emphasized the importance of contemporaneously prepared time records in any determination of counsel fees."). The Court also notes that some Massachusetts lower courts have imported the contemporaneous record requirement of the First Circuit, *see, e.g., Cowles v. Red Roof Inns, Inc.,* 1995 WL 1146192, *4 (Mass.Super.Aug.24, 1995) (quoting *Denton v. Boilermakers Local 29,* 673 F.Supp. 37, 52 (D.Mass.1987)); however, since the Supreme Judicial Court of Massachusetts has spoken directly on this issue, the Court considers its position to be the controlling view of the state of Massachusetts law on the matter.

ing the time claimed. The court was particularly concerned with sixty hours claimed for communication, where the attorney merely identified the type of communication in which he engaged (*i.e.,* phone call, email) "without any indication as to the subject matter addressed by these exchanges." *Id.* In response, the Commonwealth of Massachusetts proposed "slashing the remaining hours by fifty percent to account for bookkeeping irregularities." *Id.* The court, however, taking into account the attorney's "experience and overall success on the matter," reduced these entries by fifteen percent. *Id.;* [10] *see also Clifton v. Mass. Bay Transp. Auth.,* 2000 WL 218397, at *16 (Mass.Super.Feb.3, 2000) (reducing a request for fees by ten percent for work done for a co-defendant whose case settled, noting that "the absence of detail in the time records" made it "impossible" to determine the amount of time spent on the co-defendant).

### 2. Section 16 of the Clayton Act

Plaintiff also moves for attorneys' fees under Section 16 of the Clayton Act, which provides, in part, that "[i]n any action under this section in which the plaintiff substantially prevails, the court shall award the cost of suit, including a reasonable attorney's fee, to such plaintiff." 15 U.S.C. § 26. As done above, the Court, for the purposes of this analysis, will focus only on those areas of federal attorneys' fees jurisprudence that are implicated by the parties' arguments.

■■ This Circuit has adopted a "market value" approach in order to determine an appropriate fee under federal law. *See Copeland v. Marshall,* 641 F.2d 880 (D.C.Cir.1980) ("*Copeland III* ") (en banc).

> The initial task in determining an appropriate fee award under [the market value approach] is to establish the "lodestar": the number of hours reasonably expended multiplied by a reasonable hourly rate. [*Copeland III,*] 641 F.2d at 891. A reasonable hourly rate was defined in *Copeland III* as that prevailing in the community for similar work. *Id.* at 892. Once established, the lodestar may be adjusted to reflect various other factors. The Court noted that a premium should generally be awarded if counsel would have obtained no fee in the event the suit was unsuccessful or if the fee award is made long after the services were rendered. *Id.* at 892–93. In addition, it indicated that the lodestar figure may be either increased or reduced to recognize legal representation of unusually superior or inferior quality. *Id.* at 893–94. Recognizing that some of the elements of this formula were necessarily somewhat imprecise, the Court emphasized that "we ask only that the district court judges exercise their discretion as conscientiously as possible, and state their reasons as clearly as possible." *Id.* at 893.

*Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.,* 675 F.2d 1319, 1323

---

10. The Court notes that the *Roberts* court relied on First Circuit precedent to support its reduction of the fee request. *See Roberts,* 2002 WL 31862711 at *4. However, the court was considering the fee request for a case brought under Massachusetts law, *see id.* at *1, and therefore this Court treats the case as controlling Massachusetts attorney's fees jurisprudence. The Court presumes that courts following the Massachusetts Supreme Judicial Court's ruling in *Fontaine,* have sought guid-

ance from federal courts in undertaking the lodestar analysis. *See also Cowles v. Red Roof Inns, Inc.,* 1995 WL 1146192, at * (Mass.Super.Aug.24, 1995) (deciding attorney's fees under Massachusetts statute, but citing First Circuit precedent for the requirement that the "party seeking fees has a duty to submit detailed and contemporaneous time records," and that "failure to do so may justify a drastically reduced award") (citations and internal quotation marks omitted).

(D.C.Cir.1982) (*"Concerned Veterans"*); *see also id.* at 1323 n. 2 (noting that the "market value" approach is appropriate for "civil cases in which an award of attorneys' fees is authorized by statute"). Under federal attorneys' fees jurisprudence, "the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). A district court's award of attorneys' fees is reviewed under an abuse of discretion standard. *See, e.g., Covington v. District of Columbia,* 57 F.3d 1101, 1103 (D.C.Cir. 1995).

 A plaintiff who has achieved only limited success is not always entitled to recover all fees expended in the lawsuit. As the United States Supreme Court has instructed:

> Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee. Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised. But where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained.

*Hensley v. Eckerhart,* 461 U.S. 424, 440, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *see also Thomas v. Nat'l Football League Players Ass'n,* 273 F.3d 1124, 1128 (D.C.Cir.2001) (quoting same).

In terms of documentation of attorneys' fees petitions, this Circuit has stated that

> [c]ausal, after-the-fact estimates of time expended on a case are insufficient to

support an award of attorneys' fees. Attorneys who anticipate making a fee application *must* maintain contemporaneous, complete and standardized time records which accurately reflect the work done by each attorney. As stated by the Court of Appeals for the Second Circuit, "any attorney who hopes to obtain an allowance from the court should keep accurate and current records of work done and time spent."

*Concerned Veterans,* 675 F.2d at 1327 (citations omitted) (emphasis added); *see also In re Donovan,* 877 F.2d 982, 994 (C.A.D.C.Cir.1989) ("Turning to issues which generally affect attorneys' fee requests, this court will require that fee applications include contemporaneous time records of hours worked and rates claimed, plus a detailed description of the subject matter of the work with supporting documents, if any.") (citing *Concerned Veterans,* 675 F.2d at 1327). Despite this strict language, the Circuit has instructed that

> the recordkeeping requirement should not be imposed in a draconian manner. As this court recently stated in *Jordan v. Department of Justice:*
>
> > Total denial of requested fees as a purely prophylactic measure, however, is a stringent sanction, to be reserved for only the most severe of situations, and appropriately invoked only in very limited circumstances. Outright denial may be justified when the party seeking fees declines to proffer any substantiation in the form of affidavits, timesheets or the like, or when the application is grossly or intolerably exaggerated, or manifestly filed in bad faith.

In most cases, therefore, deficiencies in documentation are cause for reduction rather than outright denial of fees.

*Action on Smoking & Health v. Civil Aeronautics Bd.*, 724 F.2d 211, 220 (D.C.Cir.1984) (footnotes omitted).[11]

▮▮▮▮ Not only should fee petitions be based on contemporaneous records, they must also be sufficiently documented. Where the description of hours is inadequate, a "court may reduce the award accordingly." *In re Donovan*, 877 F.2d at 994 (quoting *Hensley*, 461 U.S. at 433, 103 S.Ct. 1933); *see also Concerned Veterans*, 675 F.2d at 1327 ("In the preparation of fee applications it is insufficient to provide the District Court with very broad summaries of work done and hours logged."). Inadequate descriptions "fail[ ] to provide the court with any basis to determine with a high degree of certainty that the hours billed were reasonable." *In re Donovan*, 877 F.2d at 995 (quotation marks omitted). This Circuit has approached inadequately documented time requests in several ways. In one case, vague descriptions led the D.C. Circuit Court of Appeals to disallow some hours billed completely and others partially. *Id.* In other cases, the Circuit has reduced the fee request by a certain percentage. For example, in one case the D.C. Circuit eliminated completely wholly inadequately documented entries, and reduced the remaining billing by 10 percent to account for numerous inadequately detailed descriptions. *Michigan v. U.S.*

*EPA*, 254 F.3d 1087, 1094–95 (D.C.Cir. 2001) (citing *In re Pierce (Abrams Fee Application)*, 190 F.3d 586, 594 (C.A.D.C. 1999), and *In re Meese*, 907 F.2d 1192, 1204 (C.A.D.C.1990) (per curiam)); *see also Kennecott Corp. v. Envtl. Protection Agency*, 804 F.2d 763, 767 (D.C.Cir.1986) (discounting fee by 15 percent for poor documentation).

### 3. The Massachusetts and Federal Standards Compared

▮▮▮▮ After reviewing the two attorneys' fees regimes, the Court concludes that ultimately there is little difference between the approaches of the D.C. Circuit and Massachusetts to the calculation of attorneys' fees on the issues raised by the parties. Massachusetts, like the D.C. Circuit, accepts the lodestar method of calculating fees, but requires that a list of seven factors be considered in reaching a final award. *Berman*, 748 N.E.2d at 469. These factors are: (1) the nature of the case and the issues presented; (2) the time and labor required; (3) the amount of damages involved; (4) the result obtained; (5) the experience, reputation and ability of the attorney; (6) the usual price charged for similar services by other attorneys in the same area; and (7) the amount of awards in similar cases. *Id.* The Court finds that factors (1), (2)[12] and (6) are necessarily

**11.** The Special Division of this Circuit has held that where "no contemporaneous records" are maintained, such a "failure is controlling" and it is proper to "disallow [the fee] petition in its entirety." *In re North (Watson Fee Application)*, 32 F.3d 607, 608, 609 (C.A.D.C.1994). However, since this decision was made by the Special Division of this Circuit, it does not create binding precedent in this Circuit. *United States v. Hubbell*, 167 F.3d 552, 591 (D.C.Cir.1999) (Tatel, J., dissenting); *but see Michigan v. U.S. EPA*, 254 F.3d 1087, 1095 (D.C.Cir.2001) (stating "as we have done in similar circumstances in the past, after all other deductions have been taken we will make a further deduction of

10% of the remaining billings," and citing to *In re Meese*, 907 F.2d 1192, 1204 (C.A.D.C. 1990) (emphasis added)). Furthermore, the case was decided under the Independent Counsel statute's attorney's fee provision, under which courts are to "grant reimbursement of attorneys' fees sparingly." *In re Donovan*, 877 F.2d at 989.

**12.** As this Circuit's Court of Appeals has noted, "largely subsumed under the factor 'time and labor required' is an assessment of the 'difficulty of the questions.' That is so because the more difficult the problem, the longer it will take adequately to solve it." *Copeland*, 641 F.2d at 890.

implicated by the lodestar analysis. Factor (4) is also a factor in the D.C. Circuit analysis, as this Court may not award fees for unsuccessful, unrelated claims, *see Thomas*, 273 F.3d at 1128, and factor (5) is expressly acknowledged by the D.C. Circuit as a consideration for a post-lodestar adjustment of the fee award, *Copeland*, 641 F.2d at 893–94. Finally, Factors (3) and (7) are not implicated as damages were neither sought nor awarded in this case. *See* Def.'s Ex. 1 at 34–35.[13] Therefore, it is clear that any differences between the two calculation formulas are negligible and have no impact this Court's consideration of Plaintiff's petition. Furthermore, the Supreme Judicial Court of Massachusetts instructs that reasonableness of a given award is committed to the judge's discretion, and a factor-by-factor analysis is not required. In addition, the Court finds that the two regimes' approach to contemporaneous records and insufficiently detailed substantiation to be identical, as well as their approaches to cases where a petitioner did not prevail on all of its claims.

Given these conclusions, and the fact that the bulk of Plaintiff's briefing in this case focuses on the federal standard, the Court will rely on federal law in determining the appropriate fees and costs due

Plaintiff. Plaintiff, who is in the best position to explain the state of Massachusetts law, has failed to demonstrate that Massachusetts law differs from federal law in a way that would provide it a greater award.

## B. Plaintiff's Attorneys' Fees Request

Microsoft acknowledges that Plaintiff is a prevailing party entitled to attorneys' fees. Def.'s Opp'n at 9 n. 2. Microsoft does not challenge the reasonableness of the attorney fee rates Plaintiff proffers, nor does it challenge the reasonableness of the hours Plaintiff claims were expended. Instead, Microsoft challenges Plaintiff's right to collect its fees and costs for all of the work done on the case as it failed to "prevail" on a number of its claims. Microsoft also challenges various aspects of the documentation Plaintiff provides in support of its request, arguing that Plaintiff has not properly substantiated that it actually expended the time claimed. The Court will begin by addressing Microsoft's degree of success arguments, and then move to its arguments regarding the deficiencies in Plaintiff's documentation of its fee request.

### 1. Results Obtained

When a fee petitioner does not achieve complete success, a court may reduce the

---

**13.** Furthermore, the Court notes that Plaintiff does not explicitly rely on these factors in making its request for fees under Massachusetts law. Instead, it asks the Court to weigh the "objective worth" of the case and does not discuss these factors. Pl.'s Reply at 21–23. The closest Plaintiff comes to discussing the factors is in a short paragraph in which it comments that:

> . . . the facts and circumstances of this case demonstrate the objective worth of the services performed by Massachusetts [*sic*] attorneys. First, the entire case was massive and complex, presenting a variety of complex factual and legal issues, each of which was vigorously contested by Microsoft. Second, this suit exposed unlawful conduct

affecting a huge market, perpetuated by a massive institution, and the injunction obtained is designed to benefit millions of computer users. Indeed, under Chapter 93A, the exceptional circumstances of this case would warrant an enhancement of the Commonwealth's fees. Finally, as to the fees typically charged, Microsoft does not object to the States' requested rate and, indeed, was prepared to pay $5 million to Massachusetts and West Virginia had those states not appealed.

Pl.'s Reply at 22 (footnotes omitted). Plaintiff did not request that the Court enhance its fees despite its statement in the passage above that it is so entitled.

award by deducting time spent on unsuccessful claims. *Sierra Club v. Envtl. Protection Agency*, 769 F.2d 796 (D.C.Cir. 1985) ("[W]e must be extremely reluctant to award fees for time expended on those unsuccessfully raised issues"). The Supreme Court has instructed that once a court has conducted its lodestar analysis, it must ask two questions: "First, did the plaintiff prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?" *Hensley*, 461 U.S. at 434, 103 S.Ct. 1933.[14]

When the answer to the first question is yes, "congressional intent to limit awards to prevailing parties requires that these unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claims." *Id.* at 435, 103 S.Ct. 1933. Moreover, "if successful and unsuccessful claims share a common core of facts or are based on related legal theories, then a court should simply compute the appropriate fee as a function of degree of success. In sum, if the claims are interrelated, a court is to skip the first *Hensley* inquiry and move to the second." *George Hyman Construction Co. v. Brooks*, 963 F.2d 1532, 1537 (D.C.Cir.1992) (citation omitted). As for the second inquiry,

> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee.... If, on the other hand, a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith. Congress has not authorized an award of fees whenever it was reasonable for a plaintiff to bring a lawsuit or whenever conscientious counsel tried the case with devotion and skill. Again, the most critical factor is the degree of success obtained.

*Hensley*, 461 U.S. at 435–36, 103 S.Ct. 1933.

The Court now turns to Microsoft's arguments for why Plaintiff's fee request should be reduced due to the results obtained (or not obtained). The Court first examines Microsoft's arguments regarding the fees requested for the liability phase of the case, and then turns to those related to the remedy phase of the case.

### a. Liability Phase

Plaintiff seeks $1,277,865.00 in attorneys' fees for efforts expended on the liability phase of this case. Pl.'s Mem. Ex. A. Following the *Hensley* formula, Microsoft argues that Plaintiff's fee request for the liability phase of this case should be substantially reduced due to lack of success. Microsoft begins by noting that Plaintiff initially alleged seven separate Sherman Act antitrust claims, in four distinct markets[15]:

---

14. "Though the *Hensley* analysis was crafted in the § 1988 context, it was explicitly designed by the Court to apply to all federal statutes limiting fee awards to prevailing parties." *George Hyman Construction Co. v. Brooks*, 963 F.2d 1532, 1535 (D.C.Cir.1992).

15. The markets claimed were: the market for PC operating systems; the market for Internet browser software; the market for office productivity suite software; and the market for "other applications," including Outlook Express. Def.'s Opp'n at 6 (citing Def.'s Ex. 1 (1st Am. Compl.) ¶ 13 & Def.'s Ex. 2 (Compl.) ¶¶ 64–65, 86).

(1) tying the Internet browser to the operating system (§ 1);

(2) tying "other applications," including Outlook Express, to the operating system (§ 1);

(3) agreements in restraint of trade (§ 1);

(4) maintenance of the Intel compatible PC operating system monopoly (§ 2);

(5) attempted monopolization of the Internet browser market (§ 2);

(6) maintenance of a Microsoft Office monopoly (§ 2); and

(7) leveraging of the operating system monopoly (§ 2).

Def.'s Opp'n at 6. Microsoft argues that since Plaintiff prevailed only on its operating system monopoly maintenance claim and only proved the existence of the PC operating systems market, its fee request should be reduced. *Id.*

Microsoft contends that two of Plaintiff's unsuccessful claims—the tying of "other applications" to the operating system and maintenance of the Microsoft Office monopoly[16]—were completely distinct from the successful operating system monopoly claim. Def.'s Opp'n at 6–8. Therefore, Microsoft contends that Plaintiff is not entitled to fees for time spent pursuing these claims.

As for the remaining claims, Defendant argues that although they are related to the successful claim, this Court must reduce Plaintiff's recovery to account for their lack of success. Def.'s Opp'n at 9. A review of the record of this case shows that Judge Jackson granted Defendant summary judgment on Plaintiff's seventh claim, finding that "the theory of 'monopoly leveraging' is inconsistent with both the Sherman Act's plain text and with Supreme Court pronouncements on the general limitations of its reach." *United States v. Microsoft Corp.*, Nos. 98–1232 & 98–1233, 1998 WL 614485, at *1 (D.D.C. Sept.14, 1998); *see also* Def.'s Ex. 4 at 49–50 (Dep. of Assistant Massachusetts Attorney General Glenn Kaplan) ("We lost that claim. . . . Based on our definition . . . that you indicated we would be using we did not prevail on that claim. That definition is the dictionary definition we agreed to use [*sic*] the synonym of victorious."). In addition, after the liability trial, Judge Jackson concluded that as a matter of law, "Microsoft's arrangements with various firms did not foreclose enough of the relevant market to constitute a § 1 [of the Sherman Act] violation," thereby rejecting Plaintiff's third claim. *Microsoft*, 87 F.Supp.2d at 53; *see also* Def.'s Ex. 4 at 62–63 (Kaplan Dep.) (agreeing that the District Court rejected this claim). Although Plaintiff prevailed on its first, fourth and fifth claims at the liability trial, the D.C. Circuit Court of Appeals later determined that of the three claims

> one is no longer viable: attempted monopolization of the browser market in violation of Sherman Act § 2. One will be remanded for liability proceedings under a different legal standard: unlawful tying in violation of § 1. Only liability for the § 2 monopoly maintenance violation has been affirmed—and even that we have revised.

*Microsoft*, 253 F.3d at 103–04. The tying claim was abandoned by Plaintiff after remand. Def.'s Opp'n at 14; Def.'s Ex. 4 (Kaplan Dep.) at 66–67 (acknowledging Massachusetts did not win on this claim).

Based on this record, Microsoft advocates an 86 percent reduction in the fees Plaintiff requests for the liability stage of

---

**16.** These two claims were dropped during the pleading stage of this case. Def.'s Ex. 4 (Kaplan Dep.) at 56–57, 58–59; Pl.'s Reply at 5 n. 1.

this case. Def.'s Opp'n at 15. Microsoft argues that since Plaintiff's time records are not detailed enough to allow this Court to separate the time spent on successful claims from the unsuccessful ones, the Court should simply grant Plaintiff one-seventh of its fees, reflecting the fact that it prevailed on one of its seven claims.

In response, Plaintiff argues that all of its claims were "closely related," and therefore its "reasonable fee should not be reduced due to 'unsuccessful' claims." Pl.'s Reply at 5. In support of its position, Plaintiff points out that the D.C. Circuit Court of Appeals observed that many of its claims "turned on a common core of facts." *Id.* at 5–6 (citing *Microsoft*, 253 F.3d at 47, 80–81, 84, 96). Plaintiff argues that its "successful monopoly maintenance claim, as well as [its] successful state law claims, are properly viewed as 'umbrella' claims. That is, those claims were based on Microsoft misconduct that also served as a factual basis for more narrow, and ultimately unsuccessful, claims." *Id.* at 6. Plaintiff maintains that because its claims were interrelated, its fees documentation does not break down time spent on various claims and the "vast majority of attorney work performed was attributable to the case as a whole." Pl.'s Reply at 8 (emphasis omitted). Plaintiff represents that the factual investigation stage of this case "comprises the majority of all the liability hours," and "was necessary for all claims and potential claims." *Id.*

Therefore, according to Plaintiff, this case is exactly what the Supreme Court had in mind in *Hensley* when it wrote:

In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim ba-

sis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

*Hensley*, 461 U.S. at 435, 103 S.Ct. 1933. Where "a plaintiff has achieved only partial or limited success," the Supreme Court counsels courts like this one that "the most critical factor is the degree of success obtained," and "[t]hat the plaintiff is a 'prevailing party' ... may say little about whether the expenditure of counsel's time was reasonable in relation to the success achieved." *Id.* at 436, 103 S.Ct. 1933. In reviewing such a petition, a "district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Id.* at 436–37, 103 S.Ct. 1933. However, the Supreme Court has rejected the use of a

mathematical approach comparing the total number of issues in the case with those actually prevailed upon. Such a ratio provides little aid in determining what is a reasonable fee in light of all the relevant factors. Nor is it necessarily significant that a prevailing plaintiff did not receive all the relief requested.

*Id.* at 435 n. 11, 103 S.Ct. 1933 (quotation marks and citation omitted).

### i. Unsuccessful Unrelated Claims

 The Court agrees with Microsoft's assessment that two of Plaintiffs claims are unrelated to its successful claim. Plaintiff does little to rebut Microsoft's argument, limiting its opposition to a footnote, in which it states in conclusory fashion that "[b]eyond the interrelatedness of all claims, it is silly for Microsoft to contend that the States spent as much time on those two claims (which existed for two months) as on those claims that were liti-

gated for several years." Pl.'s Reply at 5 n. 1. Furthermore, as these claims were not litigated, the D.C. Circuit's comments on the interrelatedness of the facts and claims of Plaintiff's suit do not apply. As Microsoft points out, Plaintiff represented its Office Suite monopoly claim as involving "separate and distinct products from the PC operating system," Def.'s Ex. 2 (Pl.'s Compl.) ¶ 86, involving a different product market, *compare id.* ¶ 104 ("market for PC operating system software") *with id.* ¶ 118 ("market for office productivity suite software for personal computers"), and different alleged anticompetitive act utilizing "per copy" or "per system" licenses, *id.* ¶ 90. As for Plaintiff's Outlook Express tying claim, Microsoft notes that Plaintiff alleged that the applications involved in this claim were "separate products from Windows, each with consumer demand distinct from demand for an operating system," and that Microsoft's anticompetitive action involved plans to "bundle" these applications with Windows. *Id.* ¶¶ 64, 96. From these allegations, it appears that these claims involved different products, markets and anticompetitive conduct from the claim upon which Plaintiff established liability. The fact that these claims were dropped during the pleadings stage also indicates that they were not inextricably bound with the remaining claims.

Given these unrebutted assertions and Plaintiff's lack of response, the Court finds that Plaintiff is not entitled to recover for efforts expended on its Outlook Express and Office Suite claims as they represent separate, severable claims from that upon which it prevailed. The Court rejects Microsoft's suggestion that it deduct two-sevenths of Plaintiff's request as a result

of this finding, given the Supreme Court's instruction in *Hensley,* noted *supra.* Plaintiff asks that the Court not reduce its fee request, contending that "a fully compensatory fee award is reasonable and in the public interest." Pl.'s Reply at 8. In the alternative, Plaintiff requests that should the Court reduce fees to account for unsuccessful claims, it should deduct five percent for each claim, representing the Commonwealth's assertion that "less than five percent" of its attorneys' hours were spent on unsuccessful claims. *Id.* at 10; *see also, e.g.,* Def.'s Ex. 4 (Kaplan Dep.) at 61, 62.

The inability to determine what hours were spent on these two claims makes the Court's task at this juncture difficult. When a petitioner does not provide "an adequate description of how much time was spent on each issue, [a court] cannot determine with a high degree of certainty that the hours billed were reasonable; and where the documentation of hours is inadequate, the court may reduce the award accordingly." *Raton Gas Transmission Co. v. Fed. Energy Regulatory Comm'n,* 891 F.2d 323, 331 (D.C.Cir.1989) (citations, internal quotation marks and ellipses omitted) (finding that in the exercise of discretion a 25 percent reduction was appropriate given the lack of documentation and the fact petitioner prevailed on two of four claims). The Court notes that Plaintiff has managed to identify a total of 21.25 hours that it claims were spent solely on these two claims. Pl.'s Reply Schedule B. The Court will therefore deduct these hours from Plaintiff's request. These hours amount to $8,500.00 in fees and are identified at Schedule B of Plaintiff's Reply brief.[17] *See* App. B. The Court will also, in the exercise of its discretion, deduct ten

17. The Court does not provide descriptions of these entries as Plaintiff filed these records under seal.

percent of Plaintiff's proffered liability hours, five percent for each of the two claims. Although the Court has no way of knowing whether or not this represents an accurate percentage of the time spent on these claims, it is clear from Mr. Kaplan's sworn testimony that the Commonwealth views five percent as the high range of the amount of time spent exclusively on each of these claims. Def.'s Ex. 4 (Kaplan Dep.) at 61–62. Given the fact that these claims were abandoned early on in the litigation, the Court considers a ten percent reduction in Plaintiff's litigation hours a reasonable adjustment for the lack of success on these two claims.[18] *See* App. A.

### ii. Unsuccessful Related Claims

■ As for the remaining unsuccessful claims that Defendant agrees are related to Plaintiff's successful one, Defendant asks the Court to reduce Plaintiff's recovery by one-seventh for each of these four claims as Plaintiff has not provided the Court with time records detailing the time spent on each claim. Def.'s Opp'n at 15. However, as noted *supra*, this is not the appropriate calculus. First, such a formula has been rejected by the Supreme Court. *Hensley*, 461 U.S. at 435 n. 11, 103 S.Ct. 1933. Second, when "unsuccessful and successful claims share a common core

of facts or are based on related theories, then a court should simply compute the appropriate fee as a function of degree of success." *Brooks*, 963 F.2d at 1537 (citing *Hensley*, 461 U.S. at 434–35, 103 S.Ct. 1933).[19]

In introducing this approach, the *Hensley* court provided District Courts with guidance for its application in the complex civil rights context:

Application of this principle is particularly important in complex civil rights litigation involving numerous challenges to institutional practices or conditions. This type of litigation is lengthy and demands many hours of lawyers' services. Although the plaintiff often may succeed in identifying some unlawful practices or conditions, the range of possible success is vast. That the plaintiff is a "prevailing party" therefore may say little about whether the expenditure of counsel's time was reasonable in relation to the success achieved. In this case, for example, the District Court's award of fees based on 2,557 hours worked may have been reasonable in light of the substantial relief obtained. But had respondents prevailed on only one of their six general claims, for example the claim that petitioners' visitation,

---

18. The Court recognizes that it should arguably reduce Plaintiff's fee request on these two claims even further. The Supreme Court has instructed that "[t]he applicant ... should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims." *Hensley*, 461 U.S. at 437, 103 S.Ct. 1933; *see also id.* at 437 n. 12, 103 S.Ct. 1933. However, the Court finds this reduction appropriate, especially in light of the further reductions that will be made based on Plaintiff's inadequate documentation. *See infra.*

19. For this same reason, the Court declines to apply Plaintiff's five-percent per unsuccessful claim approach as it did for Plaintiff's unsuccessful claims that were unrelated to the suc-

cessful one. While Plaintiff may have spent only five percent of its time exclusively on each of the unsuccessful claims, that is not the question this Court must answer. This Court must determine the appropriate award based not on hours expended, but on "the degree of success obtained." *Hensley*, 461 U.S. at 436, 103 S.Ct. 1933. In addition, the Court will not deduct the hours that Plaintiff has identified as being related to these unsuccessful claims. Plaintiff identified 36.25 hours spent on these claims, Pl.'s Reply at Schedule B, and the Court has identified an additional 22.25 hours spent on the unsuccessful internet tying claim, *see* Pl.'s Reply Ex. 11 at 6, 8, 9, 10, 12, 13, 14, 21.

mail, and telephone policies were overly restrictive, a fee award based on the claimed hours clearly would have been excessive.

*Hensley*, 461 U.S. at 436, 103 S.Ct. 1933 (citation omitted). The Court finds this instruction appropriate in the present context. Here, Plaintiff and its litigation partners raised "numerous challenges" to the practices of a large player in the American marketplace, which demanded "many hours of lawyers' services." Furthermore, like in *Hensley*, the range of possible success here was vast. Without minimizing Plaintiff's success, its efforts were obviously aimed at a more robust result. Three of Plaintiff's unsuccessful claims[20] were aimed at anticompetitive conduct related to Internet browsers, and while these claims may have involved the same factual basis as that of Plaintiff's successful maintenance of the PC operating system monopoly claim, it is clear that Plaintiff's failure to prevail on these claims has reduced the degree of success it may now assert. *Cf. Emery v. Hunt*, 272 F.3d 1042 (8th Cir.2001) (finding district court erred in reducing fee request for lack of success on related claims as "[a]ll the claims raised by the plaintiffs shared the common legal goal of reestablishing House Districts 28A and 28B in time for the November 2000 election. The plaintiffs fully achieved that goal by prevailing on their state constitutional claim."). Accordingly, the Court will exercise its discretion and reduce Plaintiff's liability fees claim by an additional 30 percent to reflect its degree of success.

*See* App. A. The Court believes that a further reduction, although justifiable, is not warranted given the special nature of this case. In many ways, this case was unprecedented, and involved novel and complex legal issues and a vast factual record. Furthermore, Microsoft was a formidable adversary, contesting Plaintiff and its state counterparts at each step of the litigation. The Court finds that these factors, combined with the fact that Plaintiff sought by participating in this suit to serve the public's interest, counsel against reducing Plaintiff's recovery for this stage of the litigation any further.

### b. Remedy Phases

 Microsoft contends that Plaintiff "achieved no success on remedy," and therefore its fees with regard to these efforts should be disallowed, or substantially discounted to account for Plaintiff's lack of success. Def.'s Opp'n at 17–18.[21]

Microsoft argues that Plaintiff is not entitled to any fees for its remedy-related efforts before Judge Jackson. *Id.* at 18. The structural remedy achieved was reversed by the D.C. Circuit Court of Appeals, which then remanded the case to this Court to determine the appropriate remedy. *Microsoft*, 253 F.3d at 101–05. Plaintiff does not respond to this argument. *See* Pl.'s Reply at 10–14 (discussing only entitlement to fees for post-remand remedy proceedings); *see also* Pl.'s Mem. at 16–26 (same). Given Plaintiff's lack of response and the fact that the D.C. Circuit

---

**20.** These claims are: tying the Internet browser to the operating system, attempted monopolization of the Internet browser market, and leveraging of the operating system monopoly to foreclose competition in the Internet browser market. Def.'s Ex. 2 (Pl.'s Compl.) ¶¶ 107, 110, 112.

**21.** Microsoft contends that it is appropriate to separate this stage of the case for attorneys

fees purposes as "*Hensley* says loud and clear that when a party has obtained no favorable results in a particular aspect of litigation, that party may receive no fee for work on that part of the case." *Id.* (quoting *Anthony v. Sullivan*, 982 F.2d 586, 589 (D.C.Cir.1993)). Plaintiff does not contest this approach. *See* Pl.'s Reply at 3, 10–14; Pl's Mem. at 16–26.

Court of Appeals completely vacated Judge Jackson's remedy, the Court must reduce Plaintiff's recovery. Although in a sense the hours expended on this aspect of the case are related to Plaintiff's successful claim, the Court will treat the first remedy phase in this litigation as a separate, unsuccessful claim for purposes of this analysis. Plaintiff's efforts in this regard were aimed at a set of liability findings that were either rejected or altered by the court of appeals and for that reason were completely vacated. Therefore, the Court believes that treating this phase as unrelated to the successful claim is appropriate and, in the exercise of its discretion, it deducts from Plaintiff's recovery those hours that the Court can identify as having been expended on remedy issues prior to the case's first appeal. The Court calculates this reduction to amount to $46,440.00.[22] *See* App. C.

 As for the remedy litigation conducted after the case was remanded by the Court of Appeals, Microsoft argues that the Court should reject all of Plaintiff's fees related to that effort as the "Final Judgment bears almost no relation to the states' proposed remedy" as "every one of [its] substantive remedy proposals" was rejected by this Court. Def.'s Opp'n at 18–19. Furthermore, Microsoft posits that the differences between the settlement and the Final Judgment cannot justify Plaintiff's fee request, nor can changes made to the settlement itself be credited to Plaintiff's efforts, and thereby justify its fee request. *Id.* at 21–24. Finally, Microsoft contends that the Court's determination of an appropriate fee award in the remedy context should be informed by Plaintiff's failure to accept Microsoft's Rule 68 Offer of Judgment. *Id.* at 24–25. Plaintiff contends that it achieved significant benefits,

including conditions that exceed those contained in Microsoft's Tunney Act settlement agreement with the Department of Justice and the settling states. Pl.'s Mem. at 19–20. Plaintiff also argues that the Court of Appeals instructed that "a 'full exploration' of facts, to be developed in a remedies-specific evidentiary hearing is necessary to draw a proper antitrust injunction," Pl.'s Reply at 10 (citing *Microsoft*, 253 F.3d at 101, 103), and that it should not be penalized for rejecting Microsoft's settlement offer and carrying out the D.C. Circuit's mandate, Pl.'s Reply at 11. In the event the Court decides to reduce its fees for the remedy phase, Plaintiff asks that the Court consider the "unique circumstances of this case," and not be influenced by the "States' decision to decline Microsoft's settlement offer." Pl.'s Reply at 14. Plaintiff recommends that this Court not reduce its fees for this phase of the case by any measure, but that if it chooses to, that it reduce these fees by "ten percent, and in any event not more than thirty percent." *Id.*

The Court does not agree with Microsoft that Plaintiff did not achieve any success in its efforts during the remedy proceeding, although many of its more ambitious proposals were ultimately rejected by this Court. Their efforts achieved the result articulated by the D.C. Circuit that this Court fully explore the facts in order to establish an appropriate remedy for the liability findings. However, many of Plaintiff's proposed remedies were not aimed at addressing the conduct found to be anticompetitive, but rather sought to resolve "all existing allegations of anticompetitive behavior which have not been proven or for which liability has not been ascribed," despite the appellate court's instruction that this

---

**22.** Plaintiff included these hours in its liability phase calculations. Therefore, this deduction

is made from Plaintiff's liability hours request.

"Court's decree ... be 'tailored to fit the wrong creating the occasion for the remedy.'" *Microsoft*, 224 F.Supp.2d at 192 (quoting *Microsoft*, 253 F.3d at 107).[23] This Court observed that many of the proposed provisions were aimed at benefiting Microsoft's competitors as opposed to competition in the designated market. *Id.* at 193. This fact necessitates a reduction in Plaintiff's fee request for this phase of the case. The Court, in its discretion, shall reduce Plaintiff's remedy phase fees by 30 percent to account for its unsuccessful remedy proposals.[24] *See* App. A. The Court finds this to be an appropriate deduction, approximating the time the Court believes Plaintiff spent on non-successful remedy proposals, while still acknowledging the importance of its efforts to ensure that the ultimate Final Judgment was based on a strong record of evidence.

### 2. Documentation Issues

■ In addition to the substantive issues discussed *supra*, Microsoft raises a number of issues with regard to the manner in which Plaintiff has documented its fees request, which Microsoft contends warrant a reduction in the fees award. Microsoft objects to the fact that Plaintiff calculated the hours spent working on this case without the aid of contemporaneous time records. Furthermore, Microsoft contends that the manner in which Plaintiff calculated its hours is inaccurate and unreliable. Def.'s Opp'n at 26.

Massachusetts does not have a policy requiring its attorneys to maintain contemporaneous time records. *Id.* at 26–27; Def.'s Ex. 4 (Kaplan Dep.) at 102–03 (attorneys at the Massachusetts Attorney General's Office are not required to "record, memorialize or document their time"). Except for time spent on the fees litigation and Mr. Kaplan's time records from February 2002 through May 2002, none of the hours Plaintiff claims are based on documented contemporaneous records. Def.'s Ex. 4 (Kaplan Dep.) at 146–47. In his deposition, Massachusetts Assistant Attorney General Glenn Kaplan described the process by which the Commonwealth prepared its fee petition:

What we did is we went back through the documents that the office has, and this is true for both the earlier phase of the litigation and the remedies phase of the litigation. In both instances what we did is we went back through and looked at boxes and endless boxes of material relating to this case which included the work product in the case, the documents we received, the documents we reviewed, calendar entries, a litany of different types of materials .... Essentially, everything that we had that would

---

**23.** Included in the proposals this Court rejected were the following provisions: the lifting of third-party license restrictions, *Microsoft*, 224 F.Supp.2d at 152–53; the removal of Windows software code providing "middleware" functionalities, *id.* at 156–57; the divestiture of Microsoft Office and Microsoft Internet Explorer, *id.* at 185; the ban on "knowing interference" with the compatibility of a non-Microsoft product and Microsoft Windows or other Microsoft software products, *id.* at 186; support and licensing for immediate predecessors to the most recent version of Microsoft's Windows operating system, *id.* at 186–87; the ban on contractual tying, *id.* at 187; the ban on taking any action which might be adverse to the participants in this litigation, *id.* at 187–88; mandatory Java distribution, *id.* at 188–89; adherence to industry standards, *id.* at 190; that the Court monitor Microsoft's intellectual property claims, *id.* at 191; and that Microsoft report its investments in a wide array of technologies and businesses, *id.* at 191–92.

**24.** This deduction will be calculated after the Court reduces Plaintiff's for hours it finds are wholly deficient with regards to documentation, discussed *infra*.

have been relevant. We then reviewed those materials to the extent that those materials clearly related to a specific outlay of time that we believed we could determine was related to an individual and which was relevant to the case which since we were going through the documents was not hard to do, we would go ahead and try to record it.

To [*sic*] extent it was impossible to tie those documents to a specific task that was completed or that it was impossible to make a good estimate at the time that would have been involved in such a task we ignored those documents. . . . We then, having gone through it and while we were going through it, were conservative about—along the lines I just discussed in terms of what we would try to put down. We would go ahead then, associate the task with a date as best we could. . . . After associating it with a date and associating a conservative estimate with hours related to [*sic*] task we would then include it in notes which eventually resulted in a ledger sheet. . . . We then had a ledger sheet which had approximately nineteen hundred entries. I went back through that using my own judgment for being conservative, removed entries to the extent that I couldn't explain why they were there or if they seemed duplicative or they seemed to me to misrepresent more time than I thought we would want to claim.

After that initial cut which I made for having reviewed the records we then had . . . our list. Now one step that I missed in my description is that in going through it and putting the information

down the individual people who were involved to the extent they were still in the office would be asked about their time and asked whether it seemed right to them whether they wanted to edit in any way, etcetera, they'd be asked to validate it. To the extent people were no longer here that was not possible.

*Id.* at 122–25; *see also* Def.'s Reply at 16–17 (explaining the process used to construct their records). Massachusetts maintains that this process was "rigorous" and represents a "very conservative estimate of time spent on the litigation." Pl.'s Reply at 16–17.

Defendant argues that this method of calculating the hours is "subjective," and was made more so by the fact that those persons who extrapolated hours spent from documents were often not those who actually performed the work. Def.'s Opp'n at 28. For example, Massachusetts points to the fact that 1,390 of the 3,666 hours claimed by Plaintiff for work conducted during the liability phase of this case were attributed to Kevin Nasca. *Id.* However, since Mr. Nasca left the Massachusetts Attorney General's Office in November 1998, his hours were constructed by Mr. Kaplan without the input of Mr. Nasca. *Id.;* Def.'s Ex. 4 (Kaplan Dep.) at 149–50 (noting that he did not speak to Nasca about the time he spent on the litigation or confirm with him the accuracy of his estimates, but asserting he made conservative estimates of those tasks of which he had knowledge and that a "large portion of hours that could have been attributed to . . . Nasca were thrown off the table"), 308–09.[25] Consequently, Mr. Kaplan ac-

---

**25.** Mr. Kaplan testified:

A: I have no specific recollection of the times that Kevin worked. I can again say that when these [records] were compiled at that time I would have reviewed them and that the estimates would have been conser-

vative and reflective of the amount of time that he would have spent given the recollection of the tasks at hand where he was and what he likely did.

knowledges the possibility that the hours attributed to Nasca could include tasks he did not perform or overstate the time he spent on tasks he did perform, however he believes such errors to be highly unlikely. *Id.* at 151–52. Kaplan admits the same possibility exists for other attorneys' entries, but maintains that this possibility is unlikely. *Id.* at 136.

Microsoft claims that a fee petition based on Plaintiff's reconstruction process cannot be accurate, and points to several inconsistencies and peculiarities it claims demonstrates its point. Microsoft notes five time entries for Mr. Kaplan listing conference calls which he estimated lasted one-half hour each. Def.'s Opp'n at 29. Another attorney, Ms. Sara Hinchey, also had entries on the same date for conference calls, for each of which she billed one hour. *Id.* Mr. Kaplan asserts that it is "a fair assumption" that Ms. Hinchey's entries refer to the same conference calls as his, and that the discrepancy in time claimed could be a result of "billing judgment," but he could not offer a definitive explanation for the apparent discrepancies. Def.'s Ex. 4 (Kaplan Dep.) at 242–46. In all, Microsoft identifies 36 of these types of apparent inconsistencies. Def.'s Opp'n at 30; Def.'s Ex. 13.

Microsoft also points to what it terms "implausible consistencies" to demonstrate the inaccuracy of the estimates that underlie Plaintiff's submission. It notes that Ms. Hinchey's records include time spent on 70 conference calls, 66 of which lasted exactly one hour. Def.'s Opp'n at 30. Thirty of these calls took place on thirty consecutive days. *Id.* Plaintiff agrees that it "would be very unlikely" that these thirty calls lasted exactly one hour, but speculates that this consistency could be the

result of "billing judgment." Def.'s Ex. 4 (Kaplan Dep.) at 256–57. However, Plaintiff also acknowledges the possibility, which it maintains is unlikely, that Ms. Hinchey simply could not remember the amount of time she spent on these calls and determined she would claim one hour for each call. *Id.* at 257.

Microsoft also protests the "ballpark estimates" of time spent for work while traveling. Def.'s Opp'n at 31. Massachusetts submissions provide, for example, that Mr. Nasca billed exactly 10 hours per day for two trips, one that was four days long, the other two days long, as did another attorney, Ms. Odette, for a three day trip. *Id.* (citing Def.'s Ex. 14 at 277, 297, 300). Microsoft notes that Mr. Kaplan produced the Nasca entries, and according to Mr. Kaplan's deposition, he made these entries without "specific recollection of the times that Kevin [Nasca] worked," and did not confirm his estimates with Mr. Nasca. *Id.*; Def.'s Ex. 4 at 307–10; *see also* Def.'s Ex. 4 at 312–13 (stating that he reconstructed Ms. Odette's time and does not know if he asked her to review his assessment).

Massachusetts's failure to maintain contemporaneous time records also implicates other shortcomings Microsoft protests. Given the interconnectedness of these complaints, the Court will consider them together.

*Block Billing.* Microsoft argues that the Court should reduce Massachusetts's fee request further because of its use of "egregious, *multi-day* block billing entries." Def. Opp'n at 35 (emphasis in original). Microsoft presents the Court with a number of examples, including a single 33–day entry documenting 180 hours of work

---

Q: But Mr. Nasca did not participate in the compilation of these records. Is that correct?

A: That is true.
Def.'s Ex. 4 at 308–09.

with the description: "prepare for Chris Jones Deposition; Review documents; Prepare outline; numerous t/c with Glenn Kaplan regarding deposition." *Id.* at 36 (citing Def.'s Ex. 12 at 16). Other entries of this type include 60 hours spent over 16 days to "[r]eview and code documents produced by Microsoft," and 20 hours spent over 54 days to "[p]articipate in Daily Conference Calls re Day's events at trial and Provide Briefings to Executive Management re Same." *Id.* (citing Def.'s Ex. 12 at 6, 16). Mr. Kaplan testified that it is not possible to "[d]efinitively determine" how much time was spent on each individual task. Def.'s Ex. 4 at 284.[26] Microsoft calculates that "[m]ulti-day block billing entries account for approximately 800 hours of Massachusetts's 5382 total hours, or 15 percent of Massachusetts's' time." Def.'s Opp'n at 37. Defendant therefore contends that this Court should reduce Plaintiff's recoverable fee by 15 percent. *Id.* Massachusetts's response to this argument, in total, is that "Microsoft does not assert that the work described was not performed, only that certain descriptions should have taken a different form." Pl.'s Reply at 18.

*Lack of Particularity.* Microsoft also maintains that Plaintiff's fee petition lacks particularity as to attorney, subject and date, requiring a further reduction in Plaintiff's fee recovery. Def.'s Opp'n at 37. First, Microsoft complains that the "the hours attributable to attorneys Kaplan and Nasca are recorded in a single column." Def.'s Opp'n at 37–38 (quoting Def.'s Ex. 15 (Pl.'s Answers to Microsoft's First Set of Interrogs. Relating to the Fee Petition) at 14); *see also* Def.'s Ex. 14 (column C lists "kaplan/nasca" as the attorneys responsible for tasks). Mr. Kaplan agrees that "it is impossible to tell, using these records, which of [these attorneys] performed the work described . . . . [or] how many hours one attorney worked as opposed to the other attorney." Def.'s Ex. 4 at 215–16. The same is true for hours claimed for work done by paralegals. Def.'s Opp'n at 38 n. 12; Def.'s Ex. 4 at 217.

Second, Microsoft notes that the entries provided lack specificity, such as "descriptions of people involved in a particular event or task (e.g., the person with whom they spoke on a phone call)." Def.'s Opp'n at 38. Microsoft alleges that "[l]iterally hundreds of Massachusetts's and West Virginia's time entries fail to include the requisite level of specificity." *Id.* Massachusetts admits that some of its entries

26. In response to questioning about the basis for the 180–hour entry, Mr. Kaplan answered: This would have been provided on the same system we talked about before. Sara [Hinchey] would have reviewed the underlying documents. Then either on her recollection or to the extent that it was possible an [*sic*] estimate, a conservative estimate based on the records she would have made a determination of the time she spent.

My assumption would be given the timing here and the importance of the Jones' [*sic*] deposition to us that she didn't need any reference to the documents to know this because I know that during this time period she was working full-time essentially or at least a full equivalence worth of time on the Jones' [*sic*] deposition. . . .

Def.'s Ex. 4 at 285–86. When asked how it was possible for Ms. Hinchey to estimate the amount of time she spent working on the Jones deposition over the course of a month, Mr. Kaplan responded:

If she knows generally the amount of time that she works in a week and she keeps to a fairly ready schedule and knows when there are exceptions to that, and she knows that during the relevant time she spent all her time working assisting on the preparation for Jones, I would think it would not be that hard to go ahead and to turn that into hours. . . . It may have been she was additionally guided by some of the underlying documents that were reviewed.

*Id.* at 286–87.

"fail to describe the other persons who participated in those events," and that it is "very common" that its entries "fail[ ] to include information about the topic of a given meeting, conference call, research or other task." Def.'s Ex. 4 at 274, 276.

Finally, Microsoft notes that 17 of Massachusetts's time records are undated. Def.'s Opp'n at 39. Mr. Kaplan testified that the reason for this deficiency is that Massachusetts has no way to determine the date on which these activities were performed. Def.'s Ex. 4 at 215.

Microsoft contends that a review of the records shows that 20 percent of the entries "are devoid of the necessary particularity. To avoid the burden of an entry-by-entry review of thousands of time entries, Microsoft respectively suggests that this Court reduce any otherwise recoverable fee by 20 percent." Def.'s Opp'n at 39. Plaintiff calls Microsoft's charges regarding the level of detail of its records "simply untrue. With rare exception, the time records describe the task performed in detail sufficient to show that the time was reasonably spent in this litigation." Pl.'s Reply at 18.

\* \* \* \* \* \*

Turning to the question of what impact these shortcomings should have on Massachusetts's award, Microsoft contends that the lack of contemporaneous records requires the Court to deny Massachusetts's fee petition in its entirety or, in the alternative, to reduce its request by 50 percent. Def.'s Opp'n at 34. As noted *supra*, Microsoft also argues that any remaining fees be reduced by 20 percent for lack of particularity and 15 percent for block billing. Plaintiff disputes the notion that this Circuit's precedent supports the elimination of

its fee request for lack of contemporaneous records, noting that the caselaw supports a reduction between zero and 20 percent. Pl.'s Reply at 18–19.[27] Therefore, Plaintiff suggests that any reduction this Court elects to make not exceed 20 percent, and take into account "the conservative nature of the records and the billing judgment exercised by Massachusetts." *Id.*

This case presents an uncommon question for the Court. While Defendant clearly does not challenge the reasonableness of the hours Plaintiff claims to have spent, it challenges the Court's ability to rely upon its claims due to the manner in which it compiled its petition. In addressing this argument, the Court acknowledges that there is a difference between challenging the reasonableness of the hours claimed, and the reasonableness of relying upon petitioner's claims of hours spent. As the D.C. Circuit has noted, "time records are necessary in order for us to resolve disputed questions about *what work was actually done.*" *Kennecott,* 804 F.2d at 767 (emphasis added).

The Court will not completely deny Plaintiff's fee request. "Outright denial [of fees] may be justified when the party seeking fees declines to proffer any substantiation in the form of affidavits, timesheets or the like, or when the application is grossly and intolerably exaggerated, or manifestly filed in bad faith." *Jordan,* 691 F.2d at 518; *see also Action on Smoking & Health v. Civil Aeronautics Bd.,* 724 F.2d 211, 220 (D.C.Cir.1984) ("In most cases, therefore, deficiencies in documentation are cause for reduction rather than outright denial of fees."). Plaintiff has clearly proffered substantiation, albeit questionable substantiation, and there is no allegation that its application was filed

---

**27.** Plaintiff's survey of caselaw does not include *Action on Smoking & Health v. Civil Aeronautics Board,* which reduced a fee request by one third for lack of contemporaneous records, among other deficiencies. 724 F.2d 211, 221 (D.C.Cir.1984).

in bad faith. Furthermore, Microsoft's decision not to challenge the reasonableness of the hours claimed demonstrates that the application is not "grossly and intolerably exaggerated." *Jordan*, 691 F.2d at 518. However, it is clear that the documentation is in many ways deficient and for that reason Plaintiff's request must be reduced.

Examining other cases where petitioners failed to provide a court with contemporaneous records, this Court finds only one where contemporaneous records played no part in the fee petition.[28] In *Action on Smoking & Health*, one attorney kept contemporaneous time records but had discarded them. *Action on Smoking & Health*, 724 F.2d at 221. To support his fee petition, this attorney submitted an affidavit "which tabulates within ranges the hours spent on various phases of the litigation. The affidavit is based on recollections made 2½ to 4 years after the work was performed.... He fails to specify the actual dates on which any of this work was performed." *Id.* The court found this affidavit to constitute the type of "casual after-the-fact estimate" *Concerned Veterans* rejected as a basis for a fee petition, and found some of his claimed hours "patently excessive." *Id.* at 221–22. As a result, the court reduced his claim by one-third. *Id.* at 222.

In terms of inadequate documentation, the Court finds this Circuit's opinion in *Michigan v. EPA* instructive.[29] There the government defendant protested petitioner's request for attorneys fees, asking that a large portion of them be disallowed "because the work descriptions in its billing entries are vague and contain no useful breakdown of professional time by task." *Michigan*, 254 F.3d at 1093. The court reviewed the billings, and found many wholly deficient. *Id.* at 1093–94. Some of these entries were "listed only as 'conference calls' with no indication of who these

---

**28.** There are other cases where the petitioner did not provide the court with its contemporaneous records, but did provide documentation based on actual contemporaneous records. For example, in *Jordan*, the D.C. Circuit found that the fee petition at issue there was supported by the lead attorney's affidavit

> attesting to the number of attorney and student hours expended on each phase. [He] testified in his deposition that, in arriving at the figures, he first examined the *time sheets* prepared by the staff attorneys and students recording the dates and hours worked, but not the specific tasks discharged. He then compared those sheets with a formal case file, and in this manner reconstructed the type of work performed during the hours listed.

*Jordan*, 691 F.2d at 519 (emphasis added); *see also id.* at 520 (finding this documentation was sufficient to warrant no reduction in the fee requested). In *Kennecott*, the D.C. Circuit reduced a fee request by an additional 15 percent due to petitioners' failure to provide contemporaneous records. *Kennecott*, 804 F.2d at 767. In that case, petitioners "refused to provide the *contemporaneous time logs that were compiled* to detail the hours spent on this litigation." *Id.* at 766 (emphasis added). Instead, they provided "a stack of monthly bills sent by the firm to its clients, which do not separate the work billed on this litigation from other services performed for the same companies," and "generalized summaries of work performed during the individual billing periods ... reconstructed from the contemporaneous time records that have been withheld." *Id.* at 767. Therefore, even though the court reduced the petitioner's recovery on account of the failure to produce contemporaneous records, the basis for the petitioner's request was based on contemporaneous records.

**29.** The Court recognizes that this case involves an award paid out of the public fisc. *See Michigan*, 254 F.3d at 1093. Although cases in which the government is the party paying the attorneys' fees often mention the fact that such funds come from taxpayers, *see, e.g., Am. Petroleum Inst. v. U.S. EPA,* 72 F.3d 907, 912 (D.C.Cir.1996), this Court sees no reason not to follow their approach to determine what constitutes an appropriate award when the fees will be paid from a private entity's pocket.

calls were with or what they concerned," while others referenced individuals "who are not further identified in the petition." *Id.* The state of these entries, the court found, prevented "the reasonableness of these calls" from being determined, and therefore the court "deduct[ed] the full amount of all these entries from the fee request." *Id.* at 1094. The court's review also found "the billing documents ... replete with instances of inadequately detailed descriptions. There are in particular, numerous entries concerning meetings and conferences that, although they include information concerning the identities of the individuals involved, are nevertheless devoid of any descriptive rationale for their occurrence." *Id.* at 1095. This finding resulted in "a further deduction of 10% of the remaining billings." *Id.*

The Court, taking the principles and approaches expounded by these two decisions, will in its discretion deduct from the remainder of Plaintiff's liability and remand/remedy fee requests those entries which are wholly deficient. *See* App. D. After deducting these hours, the Court will reduce the remaining liability and remand hours by 15 percent to account for the numerous entries the Court finds inadequately detailed and the fact that all of the records are based on reconstructed records.[30] *See* App. A.

A review of Plaintiff's records reveals $45,636.67 in fees claimed for "conference calls"[31] during the remand stage of this case. This amount will be stricken from Plaintiff's fee request.[32] *See* App. D.

### 3. Time Spent Preparing the Attorneys' Fees Petition

 Initially, Massachusetts did not seek to recover fees for time expended on

---

**30.** The Court will not exempt from this deduction the contemporaneous hours kept by Mr. Kaplan from February 11, 2002 through May 29, 2002, as they too suffer from vagueness. *See, e.g.,* Pl.'s Reply Ex. 11 at 11–13 (entries including "document review," "reading summaries," and "deposition preparation"). The Court also notes that this reduction is less than the 50 percent cut that Plaintiff advocated in a case involving similar issues. *See Roberts,* 2002 WL 31862711 at *4.

**31.** The Court notes that some of these entries are for "multistate conference calls" which arguably identify the participants of the call, *i.e.* the other state participants in the suit. However, the Court has elected to include them in the wholly deficient category of entries as Defendant raised various valid criticisms of these entries, such as inconsistencies in time claimed by attorneys on the same call and the fact that one attorney claimed exactly one hour for the overwhelming majority of these calls. All of these entries fail to acknowledge the topic of the conversation. The Court has not, however, placed in the "wholly deficient" category of hours those listed as EMAIL/CONVERSATION with time attributed to the single column titled "kaplan/nasca." The Court has, in its discretion, as-

sumed that these conversations took place between the two attorneys.

**32.** Plaintiffs submissions also include 72.35 hours, which the Court's calculations show constitute over $28,342.50 in fees, for activities involving the litigating states' "milk fund" and cost sharing agreements. *See generally* Pl.'s Reply Ex. 10. The milk fund "is a multistate funding mechanism ... use[d] to help ... pay for experts and otherwise provide and facilitate [the States] ability to complete multistate cases." Def.'s Ex. 4 at 320. The cost sharing agreements allowed the States to pool resources to jointly cover litigation expenses. *Id.* Microsoft has not objected to these entries and therefore the Court has elected, in its discretion, not to deem them ineligible for reimbursement. In a complicated, multi-party antitrust suit, such activities can reasonably be considered part of the "cost of suit." The same applies to two entries referring to the New York Times which the Court presumes relate to the efforts of the media to intervene in the case. *See* Pl.'s Reply Ex. 10 entries 1123 & 1446. These entries are still subject to the Court's 15 percent reduction for failure to keep contemporaneous records and lack of particularity in Plaintiff's documentation.

preparing its fee petition. Pl.'s Mem. at 30 ("[T]he States' fee application does *not* seek reimbursement for attorneys fees incurred in connection with preparing the fee application and supporting documents, although those fees are recoverable. In the event Microsoft's opposition leads to protracted fee proceedings, however, Massachusetts ... will seek to recover [its] subsequent fees and costs attributable to such proceedings.") (emphasis in original, citation omitted). However, in its Reply brief, Massachusetts asserted that "[i]n light of Microsoft's strenuous opposition," it now seeks "reimbursement of [its] fees incurred for this fee proceeding, as [it] advised Microsoft [it] would." Pl.'s Reply at 24. Plaintiff seeks $114,326.00 for 338 hours spent working on its fee petition through the filing of its Reply brief. Microsoft did not seek leave to file a surreply in response to this new request. Massachusetts later filed a supplemental request for an additional $5,484.00 for time expended on its supplemental memorandum on Massachusetts law.

■ Plaintiff is entitled to reasonable fees for preparation of its fee petition. "Cases in this Circuit have routinely awarded reasonable fees incurred in requesting fees under fee-shifting statutes." *Raton Gas,* 891 F.2d at 331 n. 83 (quoting *Hirschey v. FERC,* 777 F.2d 1, 3 (D.C.Cir.

1985), and citing *Sierra Club v. EPA,* 769 F.2d 796, 811–12 (D.C.Cir.1985), and *Laffey v. Northwest Airlines, Inc.,* 746 F.2d 4, 29–30 (D.C.Cir.1984), *cert. denied,* 472 U.S. 1021, 105 S.Ct. 3488, 87 L.Ed.2d 622 (1985)).

The Court begins by denying Plaintiff's supplemental request for fees. Plaintiff's supplemental request is for work done on its unsolicited response to Microsoft's memorandum on the application of Massachusetts law to the current fee dispute which the Court provided Microsoft the opportunity to present. Although the Court has allowed Plaintiff to file this supplemental brief, its utility was minimal. The fact that the Commonwealth of Massachusetts, represented by its Attorney General's Office, did not provide an accurate account of the Commonwealth's attorneys' fee regime as discussed *supra,* counsels against providing a full fee for this six-page submission.[33] Furthermore, had Plaintiff adequately raised the issue in its opening brief, which included analysis only on the federal attorneys' fee standard, the Court likely would not have needed to provide Microsoft with the opportunity to respond to the more robust—but still incomplete—discussion of Massachusetts law in Plaintiff's Reply brief.[34] Although the Court enjoyed its sojourn into the world of the Massachusetts's attorneys' fees re-

---

33. The Court also notes that Plaintiff's request amounts to $914 per page.

34. A review of Plaintiff's time records for the attorneys' fees phase of this case reveals only one entry of 2.8 hours referencing research on the availability of attorneys' fees under the Massachusetts statute, among other matters, done prior to the March 24, 2003, filing of Microsoft's Opposition brief. Pl. Reply Ex. 4 at 182 (2.8 hours claimed for entry: "Review time records and documentation; prepare strategy re discovery; analyze and prepare discovery responses; research law re fees apportionment, *fees under c. 93 A,* and prepare memo re same.") (emphasis added). In contrast, Plaintiff's time records for time spent between Microsoft's filing of its Opposition brief and the filing of Plaintiff's Reply brief show 4 entries referencing 24.9 hours of research and writing done on the matter. *Id.* Ex. 5 at 6 (1.5 hours claimed for "Legal research re Chapter 93A and attorney's fees"; 6.4 hours claimed for "Legal research re Chapter 93A and attorney's fees; draft reply memorandum"; 9.5 hours claimed for "Legal research re Chapter 93A and attorney's fees; draft reply memorandum"; and 7.5 hours claimed for "Revise reply; legal research re Chapter 93A and attorney's fees").

gime, it will not reward Plaintiff for making the experience more frustrating and time-consuming. Therefore, the Court exercises its discretion and denies this supplemental request.

As for the remaining fees for time expended preparing the current fee petition, the Court is pleased to note that Massachusetts's attorneys maintained contemporaneous records for this aspect of the litigation. For this reason, Microsoft's procedural objections do not apply to these requested fees. The Court would be uncomfortable awarding fees for time spent "reconstructing" the hours spent on this case, but a review of the time sheets submitted reveals that little time has been claimed for what Plaintiff asserts was a rigorous process. The Court will, however, deduct hours spent on the abeyance of the fee petition, upon which Plaintiff did not prevail. For those entries that consist only of time spent on the abeyance issue, the Court in its discretion eliminates them entirely. There are, however, other entries in which the abeyance is only one subject listed for the hours claimed. As the Court has no way to determine how many of these hours were spent on the abeyance issue as opposed to the rest, it will, following precedent in this Circuit, assume that all entries for a given date consumed an equal amount of time, and deduct the proportion of time spent on the abeyance issue. *See Michigan*, 254 F.3d at 1091.[35] The Court shall therefore exercise its discretion and deduct $5,566.43 from its request for fees for time spent preparing its fee petition. *See* App. E. The Court also deducts $2,852.67 for time spent by Plaintiff in its unsuccessful attempt to

serve discovery on Defendant during the attorneys' fees phase of this case. *See* App. F. Plaintiff had reduced its request by 8.5 hours for time spent on its unsuccessful opposition to Microsoft's motion for protective order, Pl. Reply at 24 n. 16 & Schedule C; however, a review of Plaintiff's time records reveals additional hours spent preparing the discovery requests that were quashed and therefore the Court deducts these as well from Plaintiff's request.

## C. Plaintiff's Request for Costs/Expenses

■ Massachusetts initially submitted a request for $183,814.06 in expenses, $20,302.72 in "Out of pocket expenses," and $163,511.34 in contributions toward "Cost Share." Pl.'s Mem. at 35 & Ex. E. On August 15, 2003, Plaintiff withdrew its $163,511.34 request in "Cost Share" costs. The Court now considers the $20,302.72 in expenses that remains contested.

Microsoft argues that this "Court should reduce the liability expenses by the same percentage it reduces the liability fees," asserting that "there is no way to discern whether expenses were incurred in pursuit of certain claims and issues." Def.'s Opp'n at 41. Microsoft also asks the Court to "deny ... the remedy expenses entirely, or reduce them by the same percentage it ultimately reduces the remedy fee request." Def.'s Opp'n at 41–42.

Plaintiff claims it produced all the records requested by Microsoft, and that "Microsoft declined to inquire further into any of these expenses." Pl.'s Reply at 23. Therefore, Plaintiff asserts, Microsoft's claim that Plaintiff "fail[ed] to provide meaningful discovery responses" should be

---

**35.** In following this approach, the Court has exercised its discretion to determine how many items a given entry encompasses. Guiding the Court's discretion is the fact that

the referenced status conference addressed both the abeyance request and discovery matters.

rejected. *Id.* at 23–24. A review of the interrogatories served on Plaintiff shows that Defendant asked only that the expenses be identified by the time period in which they were incurred. Pl.'s Reply Ex. 3 at 21. Neither Defendant nor Plaintiff point to any place in Mr. Kaplan's deposition where the cost request was discussed. Plaintiff has filed its expense records produced to Microsoft with the Court. Pl.'s Reply Ex. 9.[36]

■ It appears to the Court that Plaintiff's designation of these out-of-pocket expenses as "costs" is erroneous.[37] A review of Plaintiff's request shows that its $20,302.72 "costs" request consists of travel, phone calls, attending trial, and attending a "Microsoft Tech Seminar." Pl.'s Reply Ex. 9 at 00063. None of these expenses constitute "costs" under Rule 54(d) as described by 28 U.S.C. § 1920.[38] *Northcross v. Bd. of Ed. of Memphis City*

**36.** Neither party addresses the issue of what costs are recoverable under the Clayton Act. Research by the Court reveals that a number of Circuits reviewing this question have determined that the Clayton Act petitioners are entitled to recover only those costs permitted under Federal Rule of Civil Procedure 54(d) and 28 U.S.C. § 1920. *See Illinois v. Sangamo Constr. Co.*, 657 F.2d 855, 865–66 (7th Cir.1981); *Twentieth Century Fox Film Corp. v. Goldwyn*, 328 F.2d 190, 223–24 (9th Cir.), *cert. denied*, 379 U.S. 880, 85 S.Ct. 143, 13 L.Ed.2d 87 (1964); *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263, 309 n. 75 (2d Cir.1979), *cert. denied*, 444 U.S. 1093, 100 S.Ct. 1061, 62 L.Ed.2d 783 (1980); *Ott v. Speedwriting Publ'g Co.*, 518 F.2d 1143, 1149 (6th Cir.1975); *see also* Note, *Redefining the "Cost of Suit" Under Section Four of the Clayton Act*, 82 Mich. L.Rev. 1905, 1909 n.22 (1984) (hereinafter *"Redefining the 'Cost of Suit'"*) (identifying decisions in the First and Fourth Circuit affirming lower court decisions which adopted this view without discussing the cost issue). A number of Circuits have adopted the opposite approach, viewing the Clayton Act's cost provision as encompassing reasonable litigation expenses. *See Copper Liquor, Inc. v. Adolph Coors Co.*, 684 F.2d 1087, 1100–1101 (5th Cir.1982), *modified on other grounds*, 701 F.2d 542 (5th Cir. 1983) (en banc), *rev'd in part on other grounds*, *Int'l Woodworkers of Am. v. Champion Int'l Corp.*, 790 F.2d 1174 (5th Cir.1986) (holding "that the word 'cost' in the Clayton Act embraces all the ordinary and reasonable expenses of litigation"); *Alexander v. Nat'l Farmers Org.*, 696 F.2d 1210, 1212 (8th Cir. 1982); *see also Redefining the Cost of Suit*, 82 Mich. L.Rev. at 1909 n. 29 (identifying a decision in the Third Circuit affirming a lower court decision which adopted this view without an opinion), 1923–24 (advocating this rule over more restrictive version). This Circuit

has not had an opportunity to review the question.

**37.** Plaintiff refers to this request alternatively as one for "costs," *see, e.g.*, Pl. Mem. at 35 ("Massachusetts … [is] Entitled to Recover Reasonable Costs", and "expenses," *see, e.g., id.* "Massachusetts … [is] seeking litigation-related expenses").

**38.** Rule 54(d) provides that

> Except when express provision therefor is made either in a statute of the United States or in these rules, costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs…. Such costs may be taxed by the clerk on one day's notice.

Fed.R.Civ.P. 54(d). The Supreme Court has held that 28 U.S.C. § 1920 "defines the term 'costs' as used in Rule 54(d)." *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987). Section 1920 provides that

> A judge or clerk of any court of the United States may tax as costs the following:
> (1) Fees of the clerk and marshal;
> (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and copies of papers necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title;
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

*Sch.*, 611 F.2d 624, 639 (6th Cir.1979), *cert. denied*, 447 U.S. 911, 100 S.Ct. 2999, 3000, 64 L.Ed.2d 862 (1980). Instead, such expenses are considered part of attorneys' fees and may be awarded as such if such expenses are routinely billed by the attorney to his or her client. *Missouri v. Jenkins*, 491 U.S. 274, 285, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989); *see also West Virginia Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 86–88 & n. 3, 111 S.Ct. 1138, 113 L.Ed.2d 68 (1991) (stating that attorneys fees include those out-of-pocket expenses that are traditionally billed directly to clients) (citing *Northcross*, 611 F.2d at 639); *United States Football League v. Nat'l Football League*, 887 F.2d 408, 416–17 (2d Cir.1989), *cert. denied*, 493 U.S. 1071, 110 S.Ct. 1116, 107 L.Ed.2d 1022 (1990) (including out-of-pocket expenses as part of attorneys' fees award in case brought under Clayton Act); *Brown v. Pro Football, Inc.*, 839 F.Supp. 905, 916 (D.D.C.1993), *rev'd on other grounds*, 50 F.3d 1041 (D.C.Cir. 1995) (finding in suit brought under the Clayton Act that "Plaintiff's out-of-pocket costs for telephone ... and counsel's travel expenses are routinely billed to fee-paying clients, and thus are all compensable as part of a reasonable attorney's fee," and making a separate award of costs under 28 U.S.C. § 1920).

Plaintiff's documentation of its "costs" include a table listing the date, description and amount of each expenditure. Pl.'s Reply Ex. 9 at 00063. The table also includes a column titled "Name" under which the names of attorneys and "Omega," a travel agency, are listed. *Id.; id.* at 000100.

Following this ledger are over 100 pages consisting of receipts presumably documenting the expenses on the ledger. *See generally id.* Otherwise, the Court is provided no explanation regarding these expenses other than conclusory statements that the expenses should be awarded. *See* Pl.'s Mem at 35; Pl.'s Reply at 23–24.

Plaintiff, as the petitioner, "bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley*, 461 U.S. at 437, 103 S.Ct. 1933; *Covington v. District of Columbia*, 57 F.3d 1101, 1107 (D.C.Cir.1995). As was the case with Plaintiff's claims for attorneys' time, discussed *supra*, many of Plaintiff's descriptions of its "costs" are wholly deficient. Many of Plaintiff's expenses are described merely as "Travel Expenses for Year," "Phone Calls & Related Expenses," "Phone Calls," and "Airfare." Pl.'s Reply Ex. 9 at 00063. The Court declines to assume Plaintiff's burden and conduct a receipt-by-receipt accounting in an effort to deduce the purpose of these expenses.[39] *See Copeland III*, 641 F.2d at 903 ("[A]n appellate court does not 'intend that a district court, in setting an attorneys' fee, become enmeshed in a meticulous analysis of every detailed facet of the professional representation.'") (quoting *Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Co.*, 540 F.2d 102 (3d Cir. 1976) (en banc)). Following this Circuit's approach, the Court shall eliminate the expenses claimed for these wholly deficient entries. *See Michigan*, 254 F.3d at 1093–95; *see also In re North (Shultz Fee Application)*, 8 F.3d 847, 852–53 (C.A.D.C.

---

A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree.
28 U.S.C. § 1920.

**39.** The Court notes that even if it wanted to conduct such an analysis, Plaintiff does not cross-reference its ledger entries with its receipt submissions, meaning that such an endeavor would require a significant amount of the Court's time and would not necessarily be successful in its results.

1993) (reducing travel expenses because of insufficient documentation). The Court, in the exercise of its discretion, also reduces by 15 percent those remaining entries that, while not wholly deficient, still lack the requisite particularity. These entries involve travel expenses which indicate the dates of travel and the destination, but fail to provide any indication of the purpose of the trip. Only three entries will remain untouched: one entry titled "Trip to Texas Re: IBM," and two entries titled "Microsoft Trial in DC." Pl.'s Reply Ex. 9 at 00063. The result of these reductions is an award of $8,971.94 for Plaintiff's out-of-pocket expenses. *See* App. G.

## III: CONCLUSION

After reviewing the parties' briefing, the submitted exhibits and the relevant law, the Court awards Plaintiff $967,014.52 in attorneys' fees and $0.00 in costs. *See* App. A. Given the deficient documentation and lack of explanation provided by Plaintiff, the Court considers this to be a generous award.

## APPENDIX A

### ATTORNEYS' FEES

**Liability Phase**

| | |
|---|---|
| Fee requested | $1,277,865.00 |
| Deduction for specific hours expended on unsuccessful, unrelated claims | − 8,500.00 |
| Deduction for specific hours expended on first remedy phase | − 46,440.00 |
| *Subtotal* | *$1,222,925.00* |
| Deduction for unsuccessful, unrelated claims (10%) | − 122,292.50 |
| Deduction for lack of success on related claims (30%) | − 366,877.50 |
| Deduction for lack of contemporaneous records and inadequately detailed records (15%) | − 183,438.75 |
| **Total Liability Hours** | **$ 550,316.25** |

**Remedy Phase**

| | |
|---|---|
| Fee requested | $ 594,400.00 |
| Deduction of wholly deficient entries | − 45,636.67 |
| *Subtotal* | *$ 548,763.33* |
| Deduction for lack of success (30%) | − 164,629.00 |
| Deduction for lack of contemporaneous records and inadequately detailed records (15%) | − 82,314.50 |
| **Total Remedy Hours** | **$ 301,819.83** |

**Attorneys' Fee Petition Phase**

| | |
|---|---|
| Fee requested | $ 119,810.00 |
| Deduction for Time Spent on Abeyance Issue | − 5,566.43 |
| Deduction for Discovery Dispute | − 2,852.67 |
| Deduction for supplemental Massachusetts law briefing | − 5,484.00 |
| **Total Fee Petition Hours** | **$ 105,906.90** |

**Out–of–Pocket Expenses**

| | |
|---|---|
| Expenses requested | $ 20,302.72 |
| Reduction for Wholly Inadequate Entries and Poor Documentation | − 11,331.18 |
| **Total Out of Pocket Expenses** | **$ 8,971.54** |

| | |
|---|---|
| **TOTAL AWARD** | **$ 967,014.52** |

**APPENDIX B**

*Microsoft Office Claim Time* **

| Entry | Date | Time | Rate | Total |
|---|---|---|---|---|
| 541 | 4/11/1998 | 1 | 400 | 400 |
| 559 | 4/14/1998 | 1 | 400 | 400 |
| 582 | 4/16/1998 | 1 | 400 | 400 |
| 589 | 4/16/1998 | 1 | 400 | 400 |
| 659 | 4/23/1998 | 1 | 400 | 400 |
| 974 | 5/28/1998 | 8 | 400 | 3200 |
| 1041 | 7/10/1998 | 1 | 400 | 400 |
| **TOTAL** | | 14 | | $5,600.00 |

*Tying "Other Applications" Claim Time* **

| Entry | Date | Time | Rate | Total |
|---|---|---|---|---|
| 542 | 4/11/1998 | 1 | 400 | 400 |
| 652 | 4/22/1998 | 0.25 | 400 | 100 |
| 797 | 5/7/1998 | 1 | 400 | 400 |
| 810 | 5/7/1998 | 2 | 400 | 800 |
| 894 | 5/15/1998 | 1 | 400 | 400 |
| 992 | 6/5/1998 | 2 | 400 | 800 |
| **TOTAL** | | 7.25 | | $2,900.00 |

Pl.'s Reply Ex. 10.

** The Court does not include descriptions of the entries as these timesheets were filed under seal. The Court calculated the rates based on the rates provided by Plaintiff. *See* Pl.'s Mem. Ex. A. For all the entries in the "kaplan/nasca" column, the Court applied the $400/hour rate attributed to Mr. Kaplan, as in his deposition he testified that there is no way to know to which attorney the hours refer. *See* Def.'s Opp'n Ex. 4 at 215–16 (agreeing that it is impossible to tell how many hours one attorney worked as opposed to the other).

**APPENDIX C**

*FIRST REMEDIES STAGE* **

| Entry | Hours | Rate | Total |
|---|---|---|---|
| 1044 | 1 | 400 | 400 |
| | 2 | 280 | 560 |
| 1068 | 1 | 400 | 400 |
| | 2 | 280 | 560 |
| 1075 | 4 | 400 | 1600 |
| 1076 | 1 | 400 | 400 |
| | 2 | 280 | 560 |
| 1109 | 1 | 400 | 400 |
| | 2 | 280 | 560 |
| 1191 | 1 | 400 | 400 |
| 1196 | 1 | 400 | 400 |
| 1232 | 1 | 400 | 400 |
| | 2 | 280 | 560 |
| 1242 | 4 | 400 | 1600 |
| 1268 | 0.25 | 400 | 100 |
| 1272 | 4 | 400 | 1600 |
| 1274 | 0.25 | 400 | 100 |
| 1280 | 1 | 400 | 400 |
| | 10 | 280 | 2800 |
| 1352 | 1 | 400 | 400 |
| | 2 | 280 | 560 |
| 1372 | 1 | 400 | 400 |

| Entry | Hours | Rate | Total | Entry | Hours | Rate | Total |
|-------|-------|------|-------|-------|-------|------|-------|
| | 2 | 280 | 560 | 1509 | 1 | 400 | 400 |
| 1429 | 1 | 400 | 400 | 1510 | 1 | 400 | 400 |
| | 2 | 280 | 560 | | 2 | 280 | 560 |
| 1437 | 1 | 400 | 400 | 1514 | 1 | 400 | 400 |
| | 2 | 280 | 560 | 1515 | 1 | 400 | 400 |
| 1444 | 1 | 400 | 400 | | 2 | 280 | 560 |
| | 2 | 280 | 560 | 1518 | 0.5 | 400 | 200 |
| 1450 | 2 | 400 | 800 | 1519 | 2 | 400 | 800 |
| 1456 | 1 | 400 | 400 | 1524 | 2 | 400 | 800 |
| | 2 | 280 | 560 | | 2 | 280 | 560 |
| 1469 | 1 | 400 | 400 | 1528 | 1 | 400 | 400 |
| 1470 | 1 | 400 | 400 | 1537 | 1 | 400 | 400 |
| | 2 | 280 | 560 | 1538 | 1 | 400 | 400 |
| 1472 | 1 | 400 | 400 | | 2 | 280 | 560 |
| | 2 | 280 | 560 | 1545 | 1 | 400 | 400 |
| 1475 | 1 | 400 | 400 | 1549 | 1 | 400 | 400 |
| | 2 | 280 | 560 | | 1 | 280 | 280 |
| 1484 | 1 | 400 | 400 | 1552 | 1 | 400 | 400 |
| | 2 | 280 | 560 | 1555 | 0.5 | 400 | 200 |
| 1487 | 1 | 400 | 400 | | 1 | 280 | 280 |
| 1489 | 1 | 400 | 400 | 1558 | 1 | 400 | 400 |
| | 2 | 280 | 560 | 1563 | 1 | 400 | 400 |
| 1491 | 1 | 400 | 400 | 1564 | 1 | 400 | 400 |
| 1499 | 1 | 400 | 400 | | 2 | 280 | 560 |
| | 2 | 280 | 560 | 1566 | 1 | 400 | 400 |
| 1501 | 1 | 400 | 400 | 1568 | 1 | 400 | 400 |
| 1503 | 4 | 400 | 1600 | 1604 | 1 | 400 | 400 |
| 1505 | 1 | 400 | 400 | 1615 | 2 | 400 | 800 |
| | 2 | 280 | 560 | 1616 | 3 | 400 | 1200 |
| 1507 | 3 | 400 | 1200 | 1618 | 2 | 400 | 800 |
| 1508 | 1 | 400 | 400 | | | | |

**TOTAL** **$46,440**

** The Court does not include descriptions of the
entries as these timesheets were filed under
seal. The Court calculated the rates based on

the rates provided by Plaintiff. *See* Pl.'s Mem. Ex. A. For all the entries in the "kaplan/nasca" column, the Court applied the $400/hour rate attributed to Mr. Kaplan, as in his deposition he testified that there is no way to know to which attorney the hours refer. *See* Def.'s Opp'n Ex. 4 at 215–16 (agreeing that it is impossible to tell how many hours one attorney worked as opposed to the other).

## APPENDIX D

*Wholly Deficient Entries* [40]

| Entry Page | Entry Date | Hours | Rate | Reduction | Total Reduction |
|---|---|---|---|---|---|
| 1 | 10/31/2001 | 4 | 460 | 50% | $920.00 |
| | 11/1/2001 | 4 | 460 | 50% | 920.00 |
| | 11/2/2001 | 4 | 460 | 50% | 920.00 |
| | 11/26/2001 | 1 | 460 | 100% | 460.00 |
| | 11/30/2001 | 1 | 460 | 100% | 460.00 |
| 2 | 11/1/2001 | 2 | 460 | 50% | 460.00 |
| | 11/2/2001 | 2 | 460 | 50% | 460.00 |
| | 11/26/2001 | 1 | 460 | 100% | 460.00 |
| | 3/22/2002 | 2 | 460 | 50% | 460.00 |
| 3 | 10/31/2001 | 2 | 400 | 50% | 400.00 |
| | 11/1/2001 | 2 | 400 | 50% | 400.00 |
| | 11/2/2001 | 2 | 400 | 50% | 400.00 |
| | 11/26/2001 | 1 | 400 | 100% | 400.00 |
| | 3/22/2002 | 1 | 400 | 50% | 200.00 |
| 4 | 10/31/2001 | 2 | 400 | 50% | 400.00 |
| | 11/2/2001 | 2 | 400 | 50% | 400.00 |
| | 11/26/2001 | 1 | 400 | 50% | 200.00 |
| 5 | 11/26/2001 | 1 | 400 | 100% | 400.00 |
| | 11/27/2001 | 1 | 400 | 100% | 400.00 |
| 6 | 12/7/2001 | 2 | 400 | 100% | 800.00 |
| | 12/19/2001 | 1 | 400 | 100% | 400.00 |
| | 3/2/2002 | 1 | 400 | 100% | 400.00 |
| 9 | 9/4/2001 | 0.5 | 400 | 100% | 200.00 |
| | 9/6/2001 | 0.5 | 400 | 100% | 200.00 |
| | 9/12/2001 | 0.5 | 400 | 100% | 200.00 |
| | 9/18/2001 | 0.5 | 400 | 100% | 200.00 |
| | 9/19/2001 | 0.5 | 400 | 100% | 200.00 |
| | 10/3/2001 | 1 | 400 | 100% | 400.00 |
| | 10/9/2001 | 1.5 | 400 | 100% | 600.00 |
| | 10/23/2001 | 2 | 400 | 50% | 400.00 |
| | 10/25/2001 | 1 | 400 | 100% | 400.00 |
| | 10/26/2001 | 1 | 400 | 50% | 200.00 |
| | 10/29/2001 | 2 | 400 | 50% | 400.00 |
| | 10/30/2001 | 8 | 400 | 25% | 800.00 |
| | 10/31/2001 | 8 | 400 | 25% | 800.00 |

**40.** For those entries with multiple activities listed, the Court, following *Michigan v. U.S. EPA*, 254 F.3d 1087, 1091 (D.C.Cir.2001), has assumed that all entries consumed the same amount of time and reduced the deduction accordingly. The Court also notes that it does not include the descriptions of the vague entries here as Plaintiff filed these time records under seal.

| Entry Page | Entry Date | Hours | Rate | Reduction | Total Reduction |
|---|---|---|---|---|---|
| 10 | 11/1/2001 | 3 | 400 | 33% | 400.00 |
| 10 | 11/2/2001 | 8 | 400 | 20% | 640.00 |
| | 11/6/2001 | 14 | 400 | 25% | 1,400.00 |
| | 11/28/2001 | 5 | 400 | 50% | 1,000.00 |
| | 11/30/2001 | 4 | 400 | 50% | 800.00 |
| 11 | 12/18/2001 | 1 | 400 | 100% | 400.00 |
| | 12/19/2001 | 1 | 400 | 100% | 400.00 |
| | 1/2/2002 | 1 | 400 | 100% | 400.00 |
| | 1/29/2002 | 1 | 400 | 100% | 400.00 |
| 12 | 2/26/2002 | 3 | 400 | 50% | 600.00 |
| | 3/5/2002 | 2 | 400 | 50% | 400.00 |
| | 3/6/2002 | 1 | 400 | 100% | 400.00 |
| | 3/12/2002 | 2 | 400 | 50% | 400.00 |
| | 3/13/2002 | 2 | 400 | 50% | 400.00 |
| | 3/25/2002 | 3 | 400 | 50% | 600.00 |
| | 3/26/2002 | 5 | 400 | 33% | 666.67 |
| | 3/27/2002 | 2 | 400 | 50% | 400.00 |
| | 4/1/2002 | 4 | 400 | 25% | 400.00 |
| | 4/5/2002 | 3 | 400 | 50% | 600.00 |
| | 4/9/2002 | 2 | 400 | 50% | 400.00 |
| | 4/11/2002 | 3 | 400 | 50% | 600.00 |
| 13 | 4/18/2002 | 1 | 400 | 50% | 200.00 |
| | 4/19/2002 | 3 | 400 | 67% | 800.00 |
| | 5/22/2002 | 1 | 400 | 100% | 400.00 |
| | 5/29/2002 | 0.5 | 400 | 100% | 200.00 |
| | 6/26/2002 | 0.5 | 400 | 100% | 200.00 |
| | 7/10/2002 | 0.5 | 400 | 100% | 200.00 |
| | 7/24/2002 | 0.5 | 400 | 100% | 200.00 |
| | 8/7/2002 | 1 | 400 | 100% | 400.00 |
| 15 | 8/28/2001 | 1 | 280 | 100% | 280.00 |
| | 9/4/2001 | 1 | 280 | 100% | 280.00 |
| | 9/6/2001 | 1 | 280 | 100% | 280.00 |
| | 9/12/2001 | 1 | 280 | 100% | 280.00 |
| | 9/18/2001 | 1 | 280 | 100% | 280.00 |
| | 9/19/2001 | 1 | 280 | 100% | 280.00 |
| | 9/25/2001 | 1 | 280 | 100% | 280.00 |
| | 10/3/2001 | 1 | 280 | 100% | 280.00 |
| | 10/9/2001 | 1 | 280 | 100% | 280.00 |
| | 10/16/2001 | 1 | 280 | 100% | 280.00 |
| | 10/17/2001 | 1 | 280 | 100% | 280.00 |
| | 10/23/2001 | 2.5 | 280 | 100% | 700.00 |
| | 10/24/2001 | 1.5 | 280 | 100% | 420.00 |
| | 10/25/2001 | 1.5 | 280 | 100% | 420.00 |
| | 10/29/2001 | 1.5 | 280 | 100% | 420.00 |
| | 10/30/2001 | 1.5 | 280 | 100% | 420.00 |
| | 10/31/2001 | 3 | 280 | 67% | 560.00 |
| | 11/1/2001 | 3 | 280 | 67% | 560.00 |
| | 11/2/2001 | 3 | 280 | 67% | 560.00 |
| 16 | 11/13/2001 | 1 | 280 | 100% | 280.00 |

| Entry Page | Entry Date | Hours | Rate | Reduction | Total Reduction |
|---|---|---|---|---|---|
| | 11/14/2001 | 1 | 280 | 100% | 280.00 |
| | 11/26/2001 | 1 | 280 | 100% | 280.00 |
| | 11/27/2001 | 1 | 280 | 100% | 280.00 |
| | 11/28/2001 | 1 | 280 | 100% | 280.00 |
| | 11/30/2001 | 1 | 280 | 100% | 280.00 |
| | 12/3/2001 | 5 | 280 | 33% | 466.67 |
| | 12/18/2001 | 1 | 280 | 100% | 280.00 |
| | 12/19/2001 | 1 | 280 | 100% | 280.00 |
| | 1/2/2002 | 1 | 280 | 100% | 280.00 |
| 17 | 1/15/2002 | 1 | 280 | 100% | 280.00 |
| | 1/21/2002 | 1 | 280 | 100% | 280.00 |
| | 1/29/2002 | 1 | 280 | 100% | 280.00 |
| | 2/6/2002 | 1 | 280 | 100% | 280.00 |
| | 2/12/2002 | 1 | 280 | 100% | 280.00 |
| | 2/13/2002 | 1 | 280 | 100% | 280.00 |
| | 2/26/2002 | 1 | 280 | 100% | 280.00 |
| | 3/2/2002 | 1 | 280 | 100% | 280.00 |
| | 3/5/2002 | 1 | 280 | 100% | 280.00 |
| | 3/6/2002 | 1 | 280 | 100% | 280.00 |
| | 3/12/2002 | 1 | 280 | 100% | 280.00 |
| | 3/13/2002 | 1 | 280 | 100% | 280.00 |
| 19 | 6/26/2002 | 1 | 280 | 100% | 280.00 |
| | 7/10/2002 | 1 | 280 | 100% | 280.00 |
| | 7/24/2002 | 1 | 280 | 100% | 280.00 |
| | 8/7/2002 | 0.5 | 280 | 100% | 140.00 |
| | 8/21/2002 | 0.75 | 280 | 100% | 210.00 |
| | 8/28/2002 | 1 | 280 | 100% | 280.00 |
| | 9/4/2002 | 0.5 | 280 | 100% | 140.00 |
| | 9/11/2002 | 2 | 280 | 67% | 373.33 |
| 20 | 9/25/2002 | 0.5 | 280 | 100% | 140.00 |
| | **TOTAL** | | | | **$45,636.67** |

Pl.'s Reply Ex. 11 at 1–6, 9–13.

## APPENDIX E

*Attorneys' Fees Petition Phase—Reduction for Time Spent on Unsuccessful Abeyance Issue*

| Date | Attorney/Entry | Number of abeyance entries/ Number of entries for date | Amount Billed [41] | Amount Deducted |
|---|---|---|---|---|
| 12/05/02 | Kaplan/ Discussing issues re filing, holding in abeyance attorney fee petition. | 2/4 | $ 160.00 | $ 80.00 |

41. Plaintiff provided the Court with charts for each attorney working on the attorneys' fee petition. These charts provide the date, description and time spent, but do not provide each attorney's hourly rate. *See* Pl.'s Reply Exs. 4–5. The Court looks to Exhibit A of Plaintiff's fee petition to determine each attorney's hourly rate.

| | | | | |
|---|---|---|---|---|
| | Discussion with CA re atty. Fee motion, internal discussion | | | |
| 12/05/02 | Barry–Smith/ Research procedural issues re timing of fees application and motion for abeyance; analyze abeyance request; prepare proposed joint motion for abeyance | 3/3 | $1,360.00 | $1,360.00 |
| 12/09/02 | Barry–Smith/ Prepare and revise fee application for MA and WV, together with memorandum in support, and Motion for abeyance of fee proceedings | 1/2 | $2,380.00 | $1,190.00 |
| 12/20/02 | Kaplan/ Discussion re MS discovery and status conference and abeyance requests re atty. fee mtn | 1/2 | $ 200.00 | $ 100.00 |
| 12/30/02 | Kaplan/ Preparation for Court status conference re atty. fees and related motions | 1/2 | $ 200.00 | $ 100.00 |
| 12/30/02 | Barry–Smith/ Research and analyze procedure, discovery re fees proceedings; review, analyze and research MS response to abeyance motion, prepare for status conference; review discovery requests from MS | 1/3 | $1,360.00 | $ 453.33 |
| 12/31/02 | Barry–Smith/ Research and analyze procedure, discovery re fees proceedings; review, analyze and research MS response to abeyance motion, prepare for status conference; review discovery requests from MS | 1/3 | $ 680.00 | $ 226.67 |
| 12/31/02 | Kaplan/ Review of law re abeyance of atty. fee requests, prepare for status conference with Court on atty. fees | 1/1 | $ 400.00 | $ 400.00 |
| 12/31/02 | Hinchey/ Review Opposition to Abeyance Motion; Review Discovery Requests | 1/2 | $ 140.00 | $ 70.00 |
| 1/02/03 | Kaplan/ Review of MS filings re abeyance, prepare for status conference, strategy discussions, conference call with Court re abeyance, discovery, atty. fees motions; discussions internally re Court's decision on abeyance motion; discussions re strategies regarding discovery on atty. fees; review of atty. fee records/materials | 4/7 | $1,280.00 | $ 731.43 |
| 1/02/03 | Barry–Smith/ Prepare for and conduct status conference re abeyance motion, discovery; analyze discovery requests | 1/2 | $ 850.00 | $ 425.00 |
| 1/02/03 | Hinchey/ Telephonic hearing with Judge re Abeyance Motion; Office conference with JC, CBS, GK regarding hearing; Office conference with CBS re MS discovery requests | 2/3 | $ 700.00 | $ 350.00 |
| 1/21/03 | Kaplan/ Review of Court's memo/order on abeyance | 1/1 | $ 80.00 | $ 80.00 |
| **TOTAL DEDUCTION** | | | | **$5,566.43** |

Pl.'s Reply Ex. 4 at 179–82, 184.

## APPENDIX F

*Attorneys' Fees Petition Phase–Reduction for Time Spent on Attempting Discovery on Microsoft*

| Date | Attorney/Entry | Amount Billed [42] |
|---|---|---|
| 3/19/03 | Barry Smith/ Prepare discovery requests for MS; confer re same with Mr. Davis, Kaplan, Caplan, and Ms. Hinchey; phone conference with Mr. Davis re: strategy (.3) | $ 510.00 |
| 3/20/03 | Caplan/ Meet with Chris Barry–Smith and Sara Hinchey re Massachusetts' discovery requests to Microsoft re fees application. Revise and edit draft requests. | $ 600.00 |
| 3/21/03 | Caplan/ Review final fees discovery request for approval | $ 100.00 |
| 3/21/03 | Kaplan/ Research regarding discovery for attorney fee petition | $ 600.00 |
| 3/21/03 | Barry Smith/ Revise, edit, prepare and serve discovery requests on Microsoft; confer re same with Mr. Caplan; prepare Notice to Court re discovery | $ 340.00 |
| 3/24/03 | Barry Smith/ Arrange filing and service of Notice to Court; review MS objections to discovery. | $ 68.00 |
| 3/31/03 | Barry Smith/ Phone confer with Messrs. Sarafa, Braun, Davis re MS objections to discovery; review case law re discovery from fee opponents. | $ 238.00 |
| 4/17/03 | Barry Smith/ Review and analyze Microsoft reply memo re protective order; confer with Mr. Sarafa re hearing/conference | $ 102.00 |
| 5/16/03 | Barry Smith/ Review and analyze court order and opinion re protective order; review and analyze outline of reply and legal outline; confer with Messrs. Caplan, Kaplan, and Moran re reply memorandum. | $ 294.67 [43] |
| **TOTAL DEDUCTION** | | **$2,852.67 [44]** |

Pl.'s Reply Ex. 5 at 2–5.

## APPENDIX G

*Plaintiff's Out–of–Pocket Expenses*

| Description | Expense | Reduction | Award |
|---|---|---|---|
| Trip to Texas Re: IBM | $ 124.00 | 0% | $ 124.00 |
| Trip to New York | 195.00 | 15% | 165.75 |
| Trip to DC | 438.00 | 15% | 372.30 |
| Trip to DC | 228.00 | 15% | 193.80 |
| Travel Expenses for the Year | 1,426.50 | 100% | 0 |
| Trip to DC | 775.17 | 15% | 658.89 |

42. Plaintiff provided the Court with charts for each attorney working on the attorneys' fee petition. These charts provide the date, description and time spent, but do not provide each attorney's hourly rate. *See* Pl.'s Reply Exs. 4–5. The Court looks to Exhibit A of Plaintiff's fee petition to determine each attorney's hourly rate.

43. This calculation reflects a 2/3 reduction in the time billed for this entry to account for matters not involving the discovery dispute with Microsoft. *See Michigan v. U.S. EPA*, 254 F.3d 1087, 1091 (D.C.Cir.2001)

44. This amount does not include 8.5 hours spent on preparing Plaintiff's opposition to Microsoft's protective order, which Plaintiff did not seek to recover. *See* Pl.'s Reply Schedule C.

| | | | |
|---|---|---|---|
| Phone Calls & Related Expenses | 20.00 | 100% | 0 |
| Phone Calls | 247.95 | 100% | 0 |
| Trip to DC ** | 76.00 | 15% | 64.60 |
| Phone Calls ** | 76.00 | 100% | 0 |
| Microsoft Tech Seminar | 162.62 | 15% | 138.22 |
| Airfare | 2,042.50 | 100% | 0 |
| Trip to DC | 734.64 | 15% | 624.44 |
| Trip to DC | 38.00 | 15% | 32.30 |
| Trip to DC | 625.00 | 15% | 531.25 |
| Trip to DC | 551.46 | 15% | 468.74 |
| Phone Calls & Telephone Calls | 70.04 | 100% | 0 |
| Trip to DC | 207.00 | 15% | 175.95 |
| Airfare | 1,291.50 | 100% | 0 |
| Airfare | 619.50 | 100% | 0 |
| Airfare | 619.50 | 100% | 0 |
| Trip to Redmond, Washington | 651.25 | 15% | 553.56 |
| Trip to Redmond, Washington | 831.11 | 15% | 706.44 |
| Travel to Washington & NY | 104.00 | 15% | 88.40 |
| Trip to New York | 291.00 | 15% | 247.35 |
| Airfare | 441.00 | 100% | 0 |
| Phone Calls | 10.60 | 100% | 0 |
| Microsoft Trial in DC | 1,112.84 | 0% | 1,112.84 |
| Microsoft Trial in DC | 1,247.00 | 0% | 1,247.00 |
| Airfare | 435.50 | 100% | 0 |
| Airfare | 404.18 | 100% | 0 |
| Airfare | 2,134.00 | 100% | 0 |
| Airfare | 347.50 | 100% | 0 |
| Trip to DC | 921.00 | 15% | 782.85 |
| Trip to DC | 395.00 | 15% | 335.75 |
| Trip to DC | 408.36 | 15% | 347.11 |
| **TOTALS** | **$20,302.72** | | **$8,971.94** |

Pl.'s Reply Ex. 9 at 00063.

** These two entries appear as a single entry on Plaintiff's ledger, but are reduced by a different amount pursuant to the Court's decision in the accompanying Memorandum Opinion. The Court, therefore, divided the request in half and applied the appropriate reduction to each portion of the request, following the guidance provided by *Michigan v. EPA*, 254 F.3d 1087, 1091 (D.C.Cir.2001). Although the *Michigan* court dealt with separating attorney hours and not expenses, Plaintiff's failure to organize its supporting receipts in a manner that permits the Court to easily separate these expenses makes this method, in the Court's opinion, the most appropriate to apply.